Litigation Case.
Action for dissolution and settlement of a partnership.
A referee was appointed by the court, who heard the evidence and made a report to the court recommending that the plaintiff and defendant be adjudged to each own a one-half interest in certain property still belonging to the partnership, and that plaintiff be given judgment against defendant for the sum of $556.79. Both parties filed exceptions to the report of the referee, which were overruled. The court then entered judgment in favor of plaintiff against defendant for $556.79, and, in addition, adjudged that plaintiff should convey to defendant by warranty deed a one-half interest in certain lands in the state of Colorado. Both parties appealed.
The referee, Mr. Daniel Stratton, made a very careful study of the evidence in this case, and found it impossible to state an account between the parties that could be mathematically demonstrated to be correct, but did the best he could, and, after a careful review of the evidence upon our part, we are convinced that he came as nearly arriving at a correct conclusion as could be done from the evidence, except in one particular. which we shall notice later.
The plaintiff and defendant are brothers. Plaintiff was a widower living in Neosho, Mo., whose children were grown and were living elsewhere. The defendant had a family and was living in the state of Colorado. These brothers entered into a contract of partnership in writing, by which they agreed to enter into the real estate, loan, and insurance business, and any other business that the parties might agree upon, and to continue indefinitely. The plaintiff agreed to put into the partnership $30,000, the income from which should become the property of the partnership. The defendant agreed to put his entire wealth into the business, the income from which should become the property of the partnership also. Defendant's holdings at the time were estimated at about $23,000. The plaintiff purchased rental property in Neosho, Mo., and defendant owned land in Colorado and other places. It seems that the amount actually invested by plaintiff in real estate was about $28,000.
The parties agreed to live together during the partnership, or as long as should be agreeable, and the groceries and household expenses were to be paid from the business, but each partner should buy from his own funds the clothing for himself and family. The title to all property put into the partnership should remain in the party putting it in. The defendant moved to Neosho, Mo., and the parties lived together in the house of plaintiff. They began operating under the partnership agreement in July, 1924, and continued until November, 1925, when they gave up their real estate and loan business and purchased a mill and farm connected therewith, and operated that until September, 1927, when the mill and farm were sold and the partnership business ceased.
Defendant contends that, when the mill was sold, he and plaintiff made and had a complete settlement of the partnership business, and that plaintiff, for that reason, cannot maintain this action. The referee finds against him on that question, and we think rightly so. In any event, defendant filed an answer and counterclaim and consented to the appointment of a referee to take testimony and make an accounting between the parties, and cannot now be permitted to urge a complete settlement between the parties before suit.
Before the trial began, defendant filed a motion to dismiss plaintiff's cause of action upon the ground that the partnership had been dissolved by mutual consent of the parties and a full settlement made before this suit was instituted. This motion was not acted upon by the court and defendant consented to the appointment of a referee and went to trial without asking the court to pass upon this motion; hence he cannot now be heard to complain of the failure of the court to pass upon his motion.
The evidence, as stated by the referee, was very unsatisfactory. Defendant kept the books, acted as treasurer, and handled the money belonging to the partnership. The referee found: That "the books were poorly kept. Numerous corrections, erasures and alterations appear and little or no detailed information is furnished as to the source of funds credited or the purpose for which expenditures were made. It might be said, however, that these erasures and changes are plainly visible in many places, the old figures being written over or only partially erased. There seems to have been no effort made to conceal the fact that erasures and alterations were made. There are no vouchers, receipts or cancelled checks with which the book may be compared in order to check its accuracy." The defendant testified that in the business in the mill each sale or transaction was put down at the time on a pad or daily sales book and afterward transcribed to the book of sales. There were a great number of these pads and cancelled checks left in the mill when it was sold, and these were afterward destroyed by the purchaser of the mill. There is no evidence that defendant destroyed anything. Plaintiff's abstract contains a photograph of a page in the book kept at the mill, which shows a large ink blot thereon which obscures some of the entries on that page. Defendant testified that the ink was spilled on that page. The plaintiff sought before the referee, and seeks now, to have applied to defendant the rule that is applied to a party when an intentional spoliation of books or papers is shown to have been made by a party to a suit. The referee recognized the rule, but held that the evidence would not warrant its application to defendant in this case. We agree with that finding. There is another reason why plaintiff could not profit by that rule in this case. The penalty imposed upon the spoliator is that the facts pleaded by the opposite party which charge liability of the spoliator to him are to be taken as true, because it is presumed that the evidence despoiled by the other party, if not despoiled, would prove the amount of plaintiff's claim. Pomeroy v. Benton, 77 Mo. 64. Plaintiff, in his petition, did not claim any certain amount was due him from defendant, but merely asked that an accounting be taken and then judgment rendered in his favor for whatever sum should be found to be due him. If we were to try to apply the rule to defendant we could not fix any amount to be found for plaintiff under the rule, because plaintiff had not fixed any amount that he claimed to be due him.
These two brothers had become estranged and a very bitter feeling existed between them after the partnership business ceased. Defendant moved back to Colorado, and letters passed between these brothers which evinced a very strong feeling between them. Plaintiff felt that the defendant had not treated him fairly, and accused defendant of having robbed him by the way in which defendant had handled the money of the firm. When the mill was sold, a tract of land in the state of Colorado was taken as part payment, and this land was conveyed to both plaintiff and defendant so that each might own an undivided one-half interest therein. Plaintiff conceived the idea that he would try to protect himself against what he thought was the wrong practiced upon him by defendant. To carry out that purpose, he wrote defendant that he had a purchaser for the Colorado land, and asked defendant to execute a deed to his one-half interest to C. L. Linton. This the defendant did, and sent the deed to plaintiff. Plaintiff then executed a deed to Linton for his one-half interest in the land and took back a deed of trust in his own name for $2,800. Afterward, and before this suit was filed, plaintiff had Linton execute a deed back to plaintiff and defendant. He also executed a release deed, releasing the deed of trust. All these deeds were recorded in the county in Colorado where the land is located, so that on the record the title was restored to the parties the same as it was at the time they first became the owners thereof. This last deed which reconveyed the land to plaintiff and defendant was, according to the evidence of plaintiff, delivered to Mr. Dunn, who is attorney for defendant, after it had been recorded in Colorado. The defendant sought at the trial, and seeks now, to require plaintiff to keep the land and pay defendant one-half the price for which plaintiff represented he had sold it. The referee held against him on the ground that the defendant's title had been voluntarily restored by plaintiff, and defendant was not damaged by plaintiff's action in the matter. The trial court approved the action of the referee, but seems to have had some misgivings as to the restoration to defendant of his title to a one-half interest in the land, and as a part of the judgment decreed that plaintiff should execute a deed to defendant for a one-half interest in the land. This was erroneous. If plaintiff were to do that, the defendant would then have the entire interest in the land. This nobcdy asked, and equity will not sustain such action. That part of the decree should be stricken out.
This leaves one other question. It appears that for about eight months before the mill was sold defendant claimed that plaintiff left the mill and did not help in its operation, and defendant was compelled to do all the work and attend solely to the mills operation, and defendant asked $100 per month, amounting to $800, as extra compensation on that account. The referee allowed for something over four months in the sum of $460. It is a settled rule of law that, in the absence of a special agreement to that effect, one partner could not charge the other for extra services. Reily v. Russell, 34 Mo. 524; Cramer v. Bachman,68 Mo. 310, 313; Gaston v. Kellogg, 91 Mo. 104, 108, 3 S. W. 589.
Plaintiff testified that it was agreed that he was not to work in the mill, although he did work there some, and, after he quit coming to the mill, he did work on the farm which was a part of the mill property. This testimony was not denied by defendant, and should have been accepted as true. There is no evidence that defendant was caused to work additional hours or any harder by reason of plaintiff not helping in the mill, and, on the whole testimony and the law applicable thereto, we find that the allowance of $460 to defendant for work in the mill after plaintiff quit coming to the mill cannot be sustained. The result of this holding is that the amount allowed plaintiff should be increased by $230, which, added to the $556.79 allowed by the referee, will make the total allowance to plaintiff $786.79.
The judgment will be reversed, and the cause remainded, with direction to set aside the judgment entered and enter a judgment for plaintiff in the sum of $786.79, to bear 6 per cent. interest from the date of entering the former judgment and omit all reference to the Colorado land.
BAILEY and SMITH, JJ., concur.