Boyd VON SEGGERN and Elizabeth Von Seggern, Ralph Heininger and Ruby Heininger, Mrs. Joseph S. Noel, Leo B. Crabbs, Jr., Robert H. Miller and Doris M. Miller, and Miss Hortense Sanders, Respondents,

v.

310 WEST 49TH STREET, INC., a corporation, Appellant.

No. WD 32379.

Missouri Court of Appeals, Western District.

Feb. 23, 1982.

Rehearing Denied March 30, 1982.

Marion W. O'Neill, Kansas City, for appellant.

Jerome B. Stone, Kansas City, for respondents.

Before CLARK, P. J., and MANFORD and KENNEDY, JJ.

CLARK, Presiding Judge.

By petition for declaratory judgment, plaintiffs sought determination of their obligation to pay the cost of interior improvements to a cooperative apartment building which plaintiffs occupy under perpetual use and equity ownership contracts. Defendant, the corporate owner of the structure, counterclaimed to enforce payment of the disputed charges and penalties. The trial court held plaintiffs not liable for payment of the charges as assessed, enjoined defendant from pursuing collection and awarded plaintiffs their attorney fees and costs. Defendant appeals.

Plaintiffs are first floor residents in a sixteen-story apartment building known as the Wornall Plaza. In all, the building contains eighty-nine apartments, a garage, elevators, laundry facilities, an apartment for a maintenance employee, a lobby, hallways and other facilities for the use of the occupants. Ownership of the real estate is in defendant, a non-stock, not-for-profit Delaware corporation. Each apartment occupant has acquired a "Use and Equity Contract" which entitles the owner to the exclusive use of the apartment identified in the contract, the non-exclusive use of the common areas and facilities and a corresponding obligation to contribute to the ongoing expense of operating and maintaining the building. The defendant corporation acts through a board of directors elected by the use contract owners.

The dispute which culminated in this suit commenced when the board of directors decided the lobby and first floor corridors in the building should be redecorated. None of the area in question is reserved for exclusive use by plaintiffs, but certain portions of the corridors are of practical use only to plaintiffs and their guests because those corridors lead only to plaintiffs' apartments. While the same situation prevails on other floors where corridors serve as a means of ingress to and egress from the apartments on the floor, the first floor is unique because some corridor areas there serve the

entrance to the building and provide access to other facilities such as the laundry room and the mail room.

In view of the particular circumstances on the first floor, defendant's directors concluded that redecorating costs should be apportioned between the corridor areas serving plaintiffs' apartments and the remaining space used by all building residents. As to the former, the full cost was charged against plaintiffs and constitutes the crux of the dispute here. The remaining cost was divided among all the apartments in the building, including those of plaintiffs, and was billed as part of the overall building operation and maintenance expense.

The sole contractual obligation upon apartment residents for contribution to building expenses is contained in paragraph 3 of the use and equity contract, identical in language as to all apartments in the building. Summarized, the agreement contemplates that the directors of defendant corporation shall determine from time to time the amounts required for the continued ownership, maintenance and operation of the project, apportion the costs among all of the contract owners based on a formula taking into account the size and location of the apartments in the building, and assess each owner a monthly payment to defray the expenses. Special assessments are also authorized but are to be levied and paid in the same manner as regular monthly assessments. The expenses to be defrayed by assessments against contract holders are described in the following language:

" * * * capital items, betterments, alterations, replacements, principal and interest payments on any deed of trust and any outstanding debenture indebtedness, and for taxes, assessments, insurance, repairs, gas, water, electricity, legal and accounting fees, management fees, salaries, wages; and other compensation, other operating items and operating expenses, interest other than on mortgage notes and debentures, corporate expenses, fees, and taxes and other expenditures."

The use ownership contract makes no provision for assessment of expenses chargeable against any particular owners or apartments or any group of owners despite the limited benefit which some improvement may, as here, entail. The evidence disclosed no other instance in which the directors had attempted to impose an assessment upon less than the entire contingent of contract owners. In the case of redecorating other floor corridors, however, the custom and practice had been for the apartment occupants on the floor to agree among themselves as to the time for and selection of floor and wall covering replacements and to make their own arrangements for the work and payment of the cost without involvement of defendant corporation or its assessment procedures.

The decision by defendant's board of directors to redecorate the first floor areas at a cost of $12,500.00 was implemented over protestations by plaintiffs that the selections by the directors were extravagant and not suited to the personal tastes of plaintiffs. The necessity for replacing the wall and floor coverings has been conceded by plaintiffs who also tacitly acknowledge that they would have borne the cost if left to their own devices in selecting the quality and extent of redecorating to be done. Plaintiffs' objection lies in the imposition upon them of special charges for work and materials of which they did not approve and which they contend violates the pro-rata apportionment requirement of the use and equity contract in all cases where expenses are incurred by defendant for building maintenance. The contention by defendant below was that the use contract makes no express provision for corridor decoration and defendant is therefore entitled under its general corporate authority to arrange for the work and assess the cost in any fair and equitable manner.

By its judgment entry, including some thirty-seven separate findings of fact, the trial court held that the cost for redecorating the first floor corridor was an expense

payable from the building operating and maintenance fund and was includable in the general assessments for that fund levied against all use contract owners. The court further found that individual charges assessed against plaintiffs and not similarly imposed on use contract owners occupying other floors violated the terms of the use and equity contract. Concurrently, the court also found against defendant on the counterclaims for enforced payment from plaintiffs of the special assessments. The effect of the judgment was to direct a refund as to those plaintiffs who had paid the special charge under protest and to restrain collection of the charge from and imposition of sanctions against those plaintiffs who had refused payment. The court also awarded attorneys fees to plaintiffs in the amount of $3500.00.

On this appeal, defendant first contends that the decision by the trial court was in error in construing the use contract to preclude the special assessments against plaintiffs. Defendant contends here, as it did before the trial court, that the particular work of replacing hallway decor is outside the terminology used in paragraph 3 of the contract but is within the general authority of the corporation to conduct the affairs of the cooperative apartment project. In furtherance of this argument, defendant points to the long standing custom of residents on other floors to defray the cost for decorating corridors. In response, plaintiffs note that other apartment owners on the upper floors acted solely as volunteers in paying for decorations and did so without any participation or coercion by defendant and without leave or hindrance from residents on other floors. Moreover, plaintiffs assert that previous redecoration on the first floor was done at the general expense of building operating and maintenance funds.

■ As to this point, defendant urges no particularized contention of error, only general disagreement with the trial court's finding on the ultimate question of what limitation on assessments is imposed under the contract language. Because none of the relevant facts were disputed, no claim can be made that the decision was against the weight of the evidence and defendant does not complain of any erroneous declaration or application of the law. We therefore undertake appellate review of the judgment to ascertain if it is supported by substantial evidence, that is, whether the language of the contract warranted the construction given it by the trial court. In this review we are guided by the oft stated criteria applicable in court tried cases and by the presumption that the judgment is correct and is not to be reversed except on a firm belief that it is erroneous. *Husky Industries, Inc. v. Craig Industries*, 618 S.W.2d 458, 460 (Mo.App.1981).

■ The general content of the use contract as well as the delineation of operating and maintenance expenses in paragraph 3 amply justified the conclusion that only one method for providing funds by contributions from contract owners was contemplated to defray expenses. The contract purports to cover the subject fully by use of general categories and explicit items and makes no provision directly or indirectly for assessment of special charges against individual contract owners or groups of owners. Indeed, the pernicious effect of avoiding the contract requirement for general proration of expenses for limited benefit improvements to non-exclusive areas could ultimately fragment the cooperative concept of the project. If plaintiffs may be separately charged for carpet in the corridors fronting their apartments, so too could residents who use the stairs refuse to pay costs attributable to the elevators and owners who have no cars could object to expenses for maintaining the garage.

The use contract establishes two classifications of building areas, the individual apartments and the areas common and accessible to all residents. The directors have the responsibility to provide the services and facilities beyond the interior walls of the apartments and to levy charges against

all contract owners. No qualification of use attaches to the payment obligation nor is exemption from liability available if the resident chooses to avoid the area or service. The interpretation placed on the use contract by the trial court was sound.

Defendant argues in its brief that the language of paragraph 3 is ambiguous and it should therefore be construed to reflect the intention of the parties as evidenced by the custom of apartment owners on other floors who supplied at their expense the corridor decorations. The difficulty with this argument is that no issue of ambiguity was raised by the pleadings and the trial court made no finding that the contract was ambiguous. The mere fact that parties disagree as to how a contract controls their respective rights and obligations does not make the contract ambiguous. As this court pointed out in *Busch & Latta Painting Corporation v. State Highway Commission*, 597 S.W.2d 189, 197 (Mo. App.1980), whether or not a contract is ambiguous is a question of law for the court. Defendant's contention as to ambiguity is merely an argument that the court has incorrectly applied use contract paragraph 3 to govern the redecoration charges assessed against plaintiffs. On that account, as has been discussed above, substantial evidence supported the judgment of the trial court and we entertain no firm conviction that judgment was wrong.

Defendant also argues that under general corporate powers included in the articles of incorporation and bylaws, it had authority to incur expenses to maintain the building and assess the cost against plaintiffs who benefited from the improvement. That contention, of course, has merit only if the general power has not been circumscribed by specific agreement. The conclusion reached above that the use contract defines the method for assessing contract owners for operating and maintenance costs necessarily precludes defendant from acting in contravention of the agreement, regardless of the scope of general corporate authority.

In its second point, defendant contends the judgment was in error because plaintiffs later approved the acts of the directors in contracting for the redecoration work and have waived any opportunity to complain. The factual basis for this contention lies in records of defendant's annual members' meeting in 1977 and 1978, the time span during which the corridor work was first taken up and ultimately completed. Those records disclose that all acts of the directors in conducting the business of the corporation were approved as to both years with no dissenting votes recorded. At least some of the plaintiffs were in attendance at each of the meetings. The precise basis for defendant's contention is not explicated in its brief but appears to be grounded in the principle of estoppel or in the concept that dissenting members are bound by the vote of the majority.

The records of the members' meetings introduced in evidence show, both as to the 1977 and 1978 meetings, that the concluding business for each was a pro forma resolution approving acts of the corporate officers and directors unaccompanied by any recorded discussion. The resolution passed unanimously at the 1977 meeting, but the minutes in the exhibit show no disposition of the resolution at the 1978 meeting. The inference that plaintiffs here voted for the resolution as an expression of their approval and acceptance of the special assessments for corridor decorations or even voted as to that subject is, to say the least, strained.

In any event, the participation of plaintiffs in these meetings cannot be held to accomplish the consequence defendant advocates, regardless of which legal theory is advanced. The proposition that plaintiffs are obligated to pay an assessment contrary to their use contract with the defendant because the majority voted in favor of the assessment is untenable because it confuses plaintiffs' status as members of the corpo-

ration with their identities as individuals who have contracted with the corporation. The authority defendant cites, *Komanetsky v. Missouri State Medical Association*, 516 S.W.2d 545 (Mo.App.1974), holds that dissenting stockholders are bound *as stockholders* to acts of corporate directors ratified by a majority of the stockholders and they may not later assert the acts thus validated were ultra vires. Here, plaintiffs make no claim the imposition upon them of special charges by the directors were not authorized by the corporation. Their claim is that the use contracts each has with the corporation preclude imposition of such charges. As individuals, plaintiffs were entitled to enforce their rights under contracts with defendant regardless of the vote by the corporate membership.

The argument based on estoppel is equally unsound. The record indicates throughout the period when redecorating the corridors was under consideration that plaintiffs consistently protested and defendant's directors acted and announced their decision despite plaintiffs' objections. Defendant does not contend and under the agreed facts could not contend any act of plaintiffs misled defendant to incur the expense on any expectation plaintiffs would accept the assessment. An essential element of the doctrine of estoppel is detrimental reliance, *McDaniel v. Frisco Employes' Hospital Association*, 510 S.W.2d 752, 756 (Mo.App.1974), and that element is not present here.

Finally, defendant argues that the award of attorney fees was erroneous because fees were not authorized under any contract between the parties and no provision for fees appears in any statute. In *Labor's Educational and Political Club-Independent v. Danforth*, 561 S.W.2d 339 (Mo. banc 1977), at page 350 the majority opinion states in referring to § 527.100, RSMo 1978 (then RSMo 1969), " 'Costs' has been interpreted to include attorneys' fees." Although the trial court there had denied an allowance of attorney fees and that decision was affirmed on the ground that no costs were recoverable from the state, we consider it appropriate to be guided by this indication of what costs are recoverable in an action for declaratory judgment unless and until the Supreme Court indicates a different opinion. Moreover, we regard the allowance of fees here as particularly appropriate because the definition of the scope to be granted defendant in assessment of maintenance and operating costs for this cooperative apartment is of general application in regard to all such expenses and to all members who own use contracts.

Plaintiffs also seek allowance of additional fees for services of their attorney on this appeal. The request for expenses incurred on appeal is presented in their respondents' brief and was repeated at oral argument. No reply brief was filed by appellant. Despite the absence of a motion and any proof as to actual expenses incurred, we have considered the request and do not regard an additional allowance of fees to be indicated. The request for allowance of attorney fees on appeal is denied.

The judgment is affirmed.

All concur.