Elizabeth VANDEVER,
Appellant-Respondent,

v.

The JUNIOR COLLEGE DISTRICT OF METROPOLITAN KANSAS CITY, Missouri, Respondent-Appellant.

Nos. WD 36331, WD 36377.

Missouri Court of Appeals,
Western District.

Feb. 25, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 27, 1986.

Application to Transfer Denied May 13, 1986.

Hollis H. Hanover, Scott Mach, Popham, Conway, Sweeny, Fremont, & Bundschu, P.C., Kansas City, for appellant.

Darry Gene Sands, Foster C. Collins, Dietrich, Davis, Dicus, Rowlands, Schmitt & Gorman, Kansas City, for respondent.

Before CLARK, C.J., and DIXON and KENNEDY, JJ.

DIXON, Judge.

Plaintiff Elizabeth Vandever sued defendant Junior College District of Metropolitan Kansas City, Missouri (District) for breach of employment contract. District sought summary judgment of the case asserting Vandever's claim was barred under the doctrine of res judicata. The trial court denied District's motion for summary judgment, but did grant a directed verdict in its favor at the close of all the evidence. Vandever appeals the ruling sustaining the directed verdict. District cross appeals the denial of its summary judgment motion. The propriety of the trial court's action in overruling a motion for summary judgment is not an appealable order. *Parker v. Wallace*, 431 S.W.2d 136, 137 (Mo.1968). District's appeal must be dismissed.

The underlying issue of res judicata will be considered, however, since District's motion for directed verdict reasserted that Vandever's claim was barred by res judicata. The issues on appeal are: (1) whether the evidence was sufficient to make a submissible case, and (2) whether a prior action against District in which an injunction

was sought by Vandever and other furloughed teachers bars Vandever's present action under the doctrine of res judicata.

Plaintiff Vandever was employed by defendant District on a full time basis from the beginning of the fall semester of the 1972–73 academic year until December 21, 1979. Because her employment by District exceeded a five year period, Vandever obtained "non-probationary" status under the District's rules and regulations.

For each academic year Vandever was employed by District, she had a written contract. Incorporated into each contract were the Policies, Regulations, and Procedures (PRPs), which have been promulgated by the District and which govern its operations. PRP 3.0034, adopted in 1975, provides criteria for determining if a reduction in force is necessitated and how such a reduction should be implemented.

In December 1978, Vandever received letter notice from the District Chancellor advising her she would be placed on leave of absence without pay at the conclusion of the fall semester of the 1979–1980 year. On May 7, 1979 Vandever signed a contract with District effective for the fall 1979 term only. On December 21, when the fall 1979 semester ended, Vandever, as well as several other teachers, was placed on unpaid furlough. On December 26, 1979, Vandever and six other instructors filed suit against District in the Circuit Court of Jackson County, Missouri, in an action styled *Gloria Directo v. The Junior College District of Metropolitan Kansas City, Missouri*, Case No. CV 79–4929. In that case, plaintiffs alleged District had breached its contract with them and violated its own policies and procedures as well as § 168.124(4), RSMo 1978, a portion of the Teacher Tenure Act, by putting plaintiffs on unpaid leave of absence and by intending to hire part-time teachers to fill the vacancies created by the furloughed plaintiffs. Plaintiffs sought to enjoin District from continuing plaintiffs on unpaid leave of absence and from appointing new teachers to fill the vacancies created by plaintiffs' furlough. The trial judge denied

plaintiffs any injunctive relief and upon the motion of District made after trial dismissed the plaintiffs' petition for failure to state any cause of action upon which relief could be granted.

On November 1, 1982, Vandever filed the present suit against District alleging that teaching positions became available in the District during the two-year period immediately following her placement on unpaid furlough and that District, in violation of its contract with her, and in violation of its policies and procedures and § 168.124(4), RSMo, appointed new teachers on a part-time basis to fill those positions while at the same time maintaining plaintiff on unrequested, unpaid furlough. The issue as to the applicability of the Teacher Tenure Act has been abandoned and is not reached or decided in this case. District denied any breach of contract and further asserted that, as a result of plaintiff's participation in the *Directo* suit, she was barred by res judicata from bringing this suit. If res judicata applies, the claim is barred and the direction of a verdict by the trial court should be sustained.

District asserts that the trial court erred in denying it relief on res judicata grounds because all the issues in the case at bar were determined in District's favor when the *Directo* court dismissed the petition of the *Directo* plaintiffs for failure to state a claim upon which relief could be granted. District contends that in Missouri, an involuntary dismissal, such as in *Directo*, is with prejudice unless the court in its order otherwise specifies, and that it operates as an adjudication on the merits. District cites Rule 67.03 as authority for its proposition.

District is correct in its contention that the dismissal of the *Directo* petition was with prejudice. Rule 67.03 states "... any involuntary dismissal other than one for lack of jurisdiction, for prematurity of action, for improper venue or for failure to substitute a party for a decedent shall be with prejudice unless the court in its order for dismissal shall otherwise specify."

■ The dismissal was involuntary and a dismissal for failure to state a claim does not fall under any of the categories excepted from involuntary dismissal without prejudice under Rule 67.03. The lower court did not specify that its order dismissing the petition was without prejudice. Where the court sustains a defendant's motion to dismiss for failure to state a claim upon which relief can be granted, but makes no mention of whether dismissal was with or without prejudice, and where dismissal is involuntary, the dismissal is with prejudice. *Pennyrich, Inc. v. Lawton-Byrne-Bruner Insurance Agency*, 613 S.W.2d 473, 474 (Mo.App.1981).

■ District errs, however, in its assertion that such a dismissal with prejudice operates as an adjudication on the merits. *Denny v. Mathieu*, 452 S.W.2d 114, 118–119 (Mo. banc 1970), holds that a dismissal with prejudice is *not* an adjudication on the merits equivalent to a jury verdict but instead simply serves as a mechanism for termination of litigation. *Dodge v. Jackson*, 635 S.W.2d 46, 48 (Mo.App.1982), asserts correctly that *Denny* reversed a long line of cases which held a dismissal with prejudice tantamount to a judgment on the merits. The *Denny* court held that such a dismissal should only bar future litigation of the same claim against the same party, *Denny*, 452 S.W.2d at 119, and in 1974, Rule 67.03 was changed to reflect that holding. Subsequent cases which have held a dismissal with prejudice to be a judgment on the merits are inconsistent with *Denny* and with the Rules in that respect.

■ Technically, without adjudication of the prior suit on the merits, res judicata cannot exist. *Neal v. Drennan*, 640 S.W.2d 132, 136 (Mo.App.1982). Nevertheless, Vandever's present suit is barred by Rule 67.03, itself, if she is asserting "the same cause of action or claim" against the same party as was asserted in the *Directo* suit. All that is required to find identity of parties is a finding that the present plaintiff was a plaintiff in the first suit and the present defendant was a defendant in the first suit. *Roach v. Teamsters Local Union No. 688*, 455 F.Supp. 322, 324 (E.D.Mo. 1978), *aff'd*, 595 F.2d 446 (8th Cir.1979). Vandever was one of seven plaintiffs in *Directo*. The real issue is whether the present action "is the same cause of action or claim" as that ruled upon in *Directo*.

In the case at bar, Vandever alleges that as of December 21, 1979, she was put on an unrequested and unpaid leave of absence by District, that she was a "permanent" teacher at that time, that after that date, teaching positions became available with District which she was qualified and willing to teach, that District, in violation of its contract with her § 168.124(4), RSMo, and PRP No. 3.0034 appointed new teachers on a part-time basis to fill those positions while maintaining her on leave of absence, and that thereby she was illegally and improperly denied her position, salary, and benefits as a full-time teacher. Vandever requests judgment in her favor with reinstatement as a full-time teacher, and an award of back-pay and benefits stemming from the time positions first became available that Vandever was qualified to teach until the date of judgment in this case.

In the *Directo* suit, plaintiffs alleged in Count I, in pertinent part, that they were non-probationary teachers, that District, in violation of its contracts with plaintiffs and its PRP No. 3.0034, placed plaintiffs on leave of absence without pay at the conclusion of the fall semester of the 1979–1980 academic year even though there were available courses during the spring semester which plaintiffs were qualified and willing to teach, that District in further violation of its contracts and its policies and procedures, intended to hire part-time teachers to replace plaintiffs even though plaintiffs had not been offered reinstatement. Plaintiffs requested a temporary and permanent injunction be issued enjoining District from continuing plaintiffs on unpaid leave of absence as long as courses were available which they were qualified and willing to teach, and from replacing any plaintiff unless he or she was first offered and declined reinstatement.

In response to that petition, District argued, *inter alia,* that 1) an injunction was not a proper remedy, 2) part-time instructors would not "replace" plaintiffs, 3) the Teacher Tenure Act was inapplicable to the Junior College District, and 4) absent a showing of arbitrariness on the part of the Board of Trustees, its decisions on matters within its discretion are not subject to judicial review.

After having heard the *Directo* plaintiffs' evidence on the allegations raised in their petition, the trial judge denied plaintiffs' request for a temporary injunction, and upon motion of District, dismissed plaintiffs' petition for failure to state a claim upon which relief could be granted. The order in no way indicated the reason(s) why the petition failed to state a claim.

■ From the foregoing, it is impossible to determine if the cause ruled upon in *Directo* is the same one asserted here. The court order entered in *Directo* does not indicate the basis of its issuance except to say that the petition failed to state a claim upon which relief could be granted. The *Directo* plaintiffs were seeking injunctive relief and District contended injunctive relief was inappropriate. Where the trial court states no reasons for its actions, the appellate court must assume it acted for the reasons propounded in the motion to dismiss. *Pic-Walsh Freight Co. v. Cooper,* 618 S.W.2d 449, 453 (Mo.App.1981). Injunctive relief does not properly issue where there is no showing that irreparable harm will result if it does not issue. *Smith v. Western Electric Co.,* 643 S.W.2d 10, 13 (Mo.App.1982). The petitioners in *Directo* failed to allege facts which showed impending irreparable harm. For all that appears, the court could have dismissed the petition on that ground. There is no indication that the issues raised by the *Directo* plaintiffs were ever reached or decided by the trial court in that case. Vandever's claim is not barred by res judicata, nor under Rule 67.-03. The res judicata claim cannot support the trial court's direction of the verdict.

Vandever asserts on her appeal that the trial court erred in granting a directed verdict in District's favor. Vandever argues she presented a submissible case for the jury on a breach of contract theory. Vandever asserts that she, as a permanent teacher, was placed on involuntary leave of absence on December 21, 1979, that, thereafter, temporary or part-time teachers were hired as a "replacement" for her and that she is, therefore, entitled to reappointment. District defends the trial court's ruling and claims that a directed verdict was mandated because Vandever failed to prove (1) the terms of the contract; (2) that there was a breach of the contract; (3) that any damages were sustained; and (4) that District's Board of Trustees acted arbitrarily or capriciously.

■ A directed verdict is not lightly granted.

[It] is a drastic measure, and on review we must consider all of the evidence in the light most favorable to the plaintiff, accept as true that which is not entirely unreasonable or opposed to physical laws, accord to plaintiff the benefit of all favorable inferences deducible from the evidence, reject all unfavorable inferences, and disregard defendant's evidence except insofar as it aids plaintiff's case.

*Beshore v. Gretzinger,* 641 S.W.2d 858, 862 (Mo.App.1982). The defendant is only entitled to a directed verdict if reasonable minds, viewing the evidence in a light most favorable to plaintiff, could only have found in defendant's favor. *Jarrell v. Fort Worth Steel & Manufacturing Co.,* 666 S.W.2d 828, 833 (Mo.App.1984). Plaintiff's proof of a breach of contract claim required proof that a contract existed between the parties, that the plaintiff had certain rights and the defendant certain obligations thereunder, that defendant breached the contract, and that the plaintiff suffered damages therefrom. *U.S. Suzuki Motor Corporation v. Johnson,* 673 S.W.2d 105, 106 (Mo.App.1984).

The dispute in this case focuses on the rights and obligations of the parties. There is no dispute regarding the existence of the contract. District argues that Vandever "failed to adduce substantial evi-

dence of the terms of the contract." The District thus poses the issue as a failure of proof of the terms of the contract. That statement tends to obscure the real issue in the case. There is no doubt that the PRP's were expressly integrated into the contract. There is no dispute that District Procedure 3.0034 reads in pertinent part as follows:

> 8. A non-probationary faculty member's place will not be filled by a replacement within a period of two (2) years unless he/she has been offered reappointment and has declined.

and was a part of the contract between Vandever and the District. The real and substantial issue in the case is the meaning to be given to the language of Section 8 of District Procedure 3.0034. District contends "place" means a full-time teaching position, which it asserts includes activities in addition to fifteen hours of teaching, such as maintenance of office hours, development of curriculum, and involvement with programs. In effect, District's argument is that until District has established a need for a full-time position, Vandever has no right to be rehired.

District fleshes out the argument by contending that it has a right to hire part-time faculty to fill its teaching needs and, unless it acts arbitrarily and capriciously, that right is unqualified. The argument thus gives to the word "place" a meaning dependent upon future action of District. As District views the word, a "place" for rehiring Vandever would exist only if District chose to recognize the existence of such a "place" and attempt to hire a full-time teacher. Vandever, on the other hand, argues that the word "place" signifies the position that Vandever held. Thus, when people were employed for the performance of the duties Vandever had performed, her "place" had been filled by a "replacement," and the contract was breached. Vandever articulates this in terms of a full-time faculty position, which she contends consists of a teaching load of 15 hours. Her argument is that when part-time teachers were employed to teach 15 hours she was "replaced."

The mere fact that the parties do not agree on how the contract controls their respective rights and obligations does not in itself make the contract ambiguous. *Von Seggern v. 310 West 49th St., Inc.,* 631 S.W.2d 877, 882 (Mo.App.1982). Whether an ambiguity exists is a question of law. *Busch & Latta Painting Corporation v. State Highway Commission,* 597 S.W.2d 189, 197 (Mo.App.1980). To determine the existence of ambiguity, the court determines the reasonable meaning or meanings to be attributed to the contract language in the context of the agreement. When that process yields more than a single meaning, the document is ambiguous. Such an ambiguity is patent if it is shown by analysis of the language of the agreement while a latent ambiguity arises only when language plain on its face becomes uncertain or ambiguous when applied. *Id.* In either case, the trial court must first attempt a construction based on all the circumstances, evidence, and rules of construction, and if that attempt does not result in a resolution of the ambiguity or if the resolution of the ambiguity requires weighing of evidence, then the issue is for the jury. *Id.* at 198.

The issue then is whether the contract language, "a non probationary faculty member's place will not be filled by a replacement," is ambiguous. If that language is reasonably susceptible of two meanings, the contract language is ambiguous. *Harris v. Union Electric Co.,* 622 S.W.2d 239, 247 (Mo.App.1981); *Chamberlain v. Mutual Benefit Health and Accident Association,* 260 S.W.2d 790, 793 (Mo. App.1953). The contract language is considered in its context to determine the meaning or meanings that may reasonably be drawn. The District in its argument contends that the language, "a replacement," means a replacement by a single person and thus a "replacement" by more than one person would not be violative of the contract. In essence, Vandever argues that "replacement" and "place" as used in the phrase refer not to individuals but to the duties performed, and if the duties

performed by the non-probationary teacher are performed by several others, the non-probationary teacher's place has been "filled by a replacement." Which of these two meanings is to be drawn from the language of the contract is for the jury to decide. Vandever is, of course, aided by the presumption that the construction in her favor will be favored since the District drafted the agreement.

Vandever asserted at trial by her own testimony and through the testimony of Professor Jean Scurlock, an instructor employed by District, that "place" means a fifteen hour teaching load. When questioned about the definition, Vandever stated, "As teachers understand that, place means fifteen-hour teaching load." In her brief, Vandever contends Scurlock was one of the original authors of PRP 3.0034. However, at trial, when Scurlock was asked if she drafted PRP 3.0034, she responded, "I am not exactly certain I did, but the writing is my style, so I would surmise that I probably did, although these things are then rewritten, rewritten over the years." When asked about her understanding of the meaning of place, Scurlock testified, "Place means that a faculty member has a job to perform, to teach, which is fifteen credit hours per semester, or in that vicinity, anywhere from fourteen to sixteen."

Both Vandever and Scurlock testified about their "understanding" of the meaning of place. According to District, testimony about one's understanding of something does not amount to competent evidence.

■ The use of the term "understanding" is common when people express the concepts they have formed as to the meaning of certain language. In fact, such use of the term "understanding" appears in the cases. In *National Corporation v. Allan*, 280 S.W.2d 428, 433 (Mo.App.1955), the court said:

> If it appears that an ambiguous term of a contract has an established meaning amongst those engaged in the business to which the contract relates, it should be treated, in interpreting the contract, as

used according to *that understanding*, unless it clearly appears from a consideration of the entire instrument or the surrounding circumstances at the time the contract was made that a different meaning was intended.

(Emphasis supplied). This quotation is applicable as an answer to the contention made here. There were, in this case, testimonies of persons involved in the profession to which the contract relates. True enough, these persons were testifying to an opinion on the very issue to be decided, but that is appropriate when the witnesses by experience, observation, or knowledge are particularly qualified to draw such conclusions. *McKinley v. Vize*, 563 S.W.2d 505, 510 (Mo.App.1978).

■ When such a conflict exists, whether caused by the testimony alone or the testimony and the other circumstances of the case, the issue is for the jury under appropriate instructions.

It is not the place of the trial court, nor of this court, to weigh the evidence and conclude the issue.

> Where a contract is ambiguous and resort to extrinsic evidence is necessary, a jury case is made if the evidence is conflicting or if different conclusions may reasonably be drawn from the evidence but if there is no real conflict of evidence on any essential facts and the meaning of the words used is made clear by the evidence, it becomes the duty of the court and not the jury to construe the contract.

*Boswell v. Steel Haulers, Inc.*, 670 S.W.2d 906, 914 (Mo.App.1984), citing *Commerce Trust Company v. Howard*, 429 S.W.2d 702, 705–706 (Mo.1968). It cannot be said that there is no conflict in the evidence in this case on the meaning to be given to the contract language. It is reasonably susceptible to more than one meaning, and the issue was for the jury. Argument that one view or the other is more persuasive does not affect the submissibility question.

District next asserts that even if "place" means what Vandever says it does, Vandever still did not make a submissible case

because Vandever failed to adduce substantial evidence that District breached its contract with Vandever. District claims Vandever failed to show that within the two-year period following the reduction in force that a "place" became available for Vandever.

On that point, Vandever testified based on course offerings found in District's course catalog, that a "place" became available for her in the spring of 1981. She also read into evidence the answers given by District to interrogatories which revealed that 42 part-time faculty members had been hired to replace the 15 full-time faculty members who were put on unpaid furlough. Vandever further testified that during the spring 1981 semester she was offered a total of 21 semester hours as a part-time instructor at two different colleges within the district. She was unable to accept the offer because "the college has a policy of not offering part-time teachers more than twelve hours." The offer to teach 21 hours was apparently inadvertently made by District. Viewing the evidence in the light most favorable to Vandever, it should have been the function of the jury to determine if the contract was breached.

■ District also claims Vandever failed to make a submissible case in that she failed to adduce competent evidence of financial damages directly and proximately resulting to her from District's alleged breach of contract. In the first of its alternative arguments, District claims Vandever's evidence on damages should have been excluded pursuant to District's objection thereto on the grounds of surprise, prejudice, and lack of opportunity to discover due to Vandever's failure to timely correct her answers to an interrogatory which requested plaintiff's damage calculations. District made both a speaking motion for continuance on the basis of surprise which was overruled, and a motion in limine asking that Vandever be precluded from proving damages due to her failure to amend her answer to District's interrogatory. The court "took the motion in limine with the case" allowing it to pend throughout the trial.

Vandever's answer to the interrogatory in question reads:

The monetary damages will be the difference between plaintiff's income from teaching during the years since December 21, 1979 and the salary schedule of what she would have made teaching for defendant plus the value of fringe benefits lost. At the present we do not have sufficient information from defendant to adequately calculate these damages. Plaintiff's income from teaching for each of the years since December 21, 1979 is as follows:

| 1979: | $26,282 |
| 1980: | $19,468 |
| 1981: | $17,600 |
| 1982: | $11,171 |

In light of the answer given to the interrogatory, District cannot complain that it did not have information as to damages Vandever would claim at trial. District was apprised of Vandever's income from teaching for the years 1979 through 1982, and was given the formula that Vandever would use in calculating her damages. The information Vandever lacked to calculate her damages was in the hands of District. Simple substraction would have revealed to District the amount of damages Vandever would be claiming for those years. The only information which District did not have would have been Vandever's salary for 1983 and for 1984 up until the date of trial.

It is well-established that the trial court is vested with broad discretion to choose a course of action during trial when evidence is challenged on the ground that it has not been disclosed by answers to interrogatories, and in the exercise of that discretion, the trial court may admit or reject such evidence. *Manahan v. Watson*, 655 S.W.2d 807, 808 (Mo.App.1983); *Aulgur v. Zylich*, 390 S.W.2d 553, 556 (Mo.App.1965). "Necessarily, a trial court first will determine whether in the particular situation the opposing party has been prejudiced," and in some instances, it may well find no prejudice has resulted. *Laws v. City of Well-*

*ston,* 435 S.W.2d 370, 375 (Mo.1968). In the instant case, District was fully apprised of Vandever's method of calculating her damages and of her salary for the years 1979 through 1982. The trial court could have reasonably concluded that the defendant was not prejudiced by Vandever's failure to supplement her interrogatory answer nor by the amendment of her petition to include in her prayer "reasonably ascertainable future damages."

In its alternative argument, District contends that the trial court did exclude Vandever's evidence on damages by implicitly sustaining District's motion in limine. District bases this argument on the trial court's entry of judgment which includes in pertinent part:

 4. There is no substantial evidence that any alleged breach of contract by defendant was the direct or proximate cause of any damage allegedly sustained by plaintiff.

 5. There is no substantial evidence of any cause or connection between plaintiff's damages and any alleged breach of contract on the part of defendant.

According to District, the only explanation for the Court's ruling as it did on this issue is that it disregarded Vandever's evidence of damages, thereby implicitly sustaining District's motion in limine. District contends that this was a proper action by the trial court, and that it resulted in Vandever failing to make a submissible case on the issue of damages, therefore making proper a directed verdict in District's favor.

 District's conclusion is unacceptable. The burden is on the party raising an objection to insist on a ruling, and if he fails to do so, the evidence is in the record for consideration the same as other evidence; the assumption is the objection is overruled. *Welch v. Welch,* 633 S.W.2d 447, 449 (Mo.App.1982). The same principle applies to District's motion. As was stated in regard to post-trial motions in *Bennett v. North Brighton Townhouses, Inc.,* 588 S.W.2d 100, 102–103 (Mo.App. 1979), the trial judge must decide and record his rulings on motions in some fash-

ion; it is not for the appellate court to indulge in the speculation necessary to conclude by inference the ruling the trial court intended to make. Since lack of a specific ruling preserves nothing for review, this court will not consider a point upon which no ruling has been made. *Poage v. Parker,* 343 S.W.2d 203, 205–206 (Mo.App. 1961); *Oertel v. John D. Streett & Co.,* 285 S.W.2d 87, 99 (Mo.App.1955); *See Owsley v. Owsley,* 34 S.W.2d 558, 559 (Mo.App. 1931). The trial court cannot have "implicitly" sustained District's motion in limine.

Finally, District contends Vandever failed to make a submissible case because she failed to show District's Board of Trustees acted arbitrarily or capriciously. District argues that the Board is vested with broad discretion in employment matters and had the right to decide whether to combine part-time courses to create a full-time position for Vandever.

 Again, the meaning of the term "place" controls resolution of the point. A teacher's contract is construed under the general law of contracts. *Adamick v. Ferguson-Florissant School District,* 483 S.W.2d 629, 631 (Mo.App.1972); *Lynch v. Webb City School District No. 92,* 418 S.W.2d 608, 614 (Mo.App.1967). If a "place" became available within the two years following Vandever's placement on furlough, District was contractually bound to offer her reinstatement. Honoring the terms of the contract was not a discretionary matter. If Vandever offered sufficient evidence that a jury could reasonably find that a "place" is fifteen credit hours and that a "place" became available in the spring of 1981, then she was not required to show that the Board acted arbitrarily or capriciously in not rehiring her. She only had to show that it breached its contract with her by not offering her reinstatement. The court improperly directed a verdict against plaintiff.

The District's appeal is dismissed and the cause is reversed and remanded for a new trial on the plaintiff's petition.

CLARK, C.J., concurs.

KENNEDY, J., dissents in separate dissenting opinion.

KENNEDY, Judge, dissenting.

I am unable to agree that there was any ambiguity in the phrase "a non-probationary faculty member's place" as that term is used in District Procedure 3.0034. I would affirm the trial court's judgment based upon a directed verdict for defendant.

The meaning of "non-probationary faculty member's place" (as distinguished from the place, or the job, or the duties, of a part-time faculty member) is clear from the written contracts entered into from year to year by the plaintiff with the district. Those contracts provided an annual salary, regardless how many or how few credit hours of classroom teaching the faculty member did. They simply place the professional services of the faculty member at the disposal of the district for the term of the contract. By the terms of the contract the faculty member agrees "that (s)he will perform such related duties as the board of trustees, the chancellor or their designated representatives shall direct". It provides that it is "anticipated" that her assignment would be that of instructor at Penn Valley Community College, but that "(s)he may be required to serve at any other college or facility of the district". It provides that in case the facility where the faculty member has served is temporarily closed because of an emergency, the faculty member may, after termination of the emergency, be required to serve corresponding additional periods without additional compensation.

Plaintiff's witness, Ronald E. Greathouse, vice-chancellor of administrative services for the district, amplified the duties of the full-time faculty member as follows:

There are many responsibilities of full-time faculty members outside of the classroom.... Such as developing curriculum, ordering supplies, working with programs. We have various committees to determine the future program direction, what we call upon the full-time faculty to help us determine future direction of the community college.

He testified also that full-time faculty members "have interaction with the students that part-time faculty don't have in the way of having office hours".[1]

Witness Greathouse said that part-time faculty members, on the other hand, "are paid by the credit hour. They are paid ... $320 for one teaching credit hour which equals to one hour in the classroom per week for 16 weeks." He was then asked by plaintiff's counsel: "And as far as the requirements put on part-time faculty members, they just have to come on to campus, teach their class. And if they teach their class in a satisfactory manner, that's the only requirement of them getting paid. Is that right?" Witness Greathouse replied: "That is correct. They have to grade the papers and prepare for the class course outside of the classroom."

The question in this case is whether one part-time teacher teaching 15 hours, or five part-time teachers teaching 3 hours apiece, have "filled the place" of a full-time faculty member. To put the question in another way, has a furloughed full-time faculty member's place been "filled by a replacement" if 15 credit hours are being taught by part-time faculty members? That both questions should be answered in the nega-

1. There is in a large book of District policies, regulations and procedures the following definitions of "Full-Time Faculty" and "Part-Time Faculty" (Board policy 3.0002):

*Full-Time Faculty*
The full-time faculty shall be those who are awarded at least nine-month faculty contracts and who are assigned responsibilities for not less than fifty percent of their total assignment within the District as instructors, counselors, librarians/media or division chairpersons who also perform some administrative tasks and/or duties related to their divisions.
*Part-Time Faculty*
Part-time faculty shall be those who are assigned responsibilities as instructors, counselors, or librarians/media on a credit hours or contact hour rate not to exceed 10 credit hours or 14 contact hours.
The book was marked for identification but the foregoing policies were not read into evidence.

tive seems beyond cavil. The additional duties, other than teaching, required of a full-time faculty member by the written contract between himself and the district are not "filled" by part-time teachers. The additional duties (or we may say the alternative duties, for some full-time faculty members carry less than a full-time load of classroom teaching, and some may do no teaching at all) required of full-time faculty members are simply foregone by the district. If the district does not need the additional services provided by full-time faculty members, then it is the privilege of the district to dispense with them, as it did when it furloughed the plaintiff.[2]

The majority opinion says, however, that the plaintiff's testimony of her unilateral "understanding" that the "place" of a full-time faculty member consists of 15 credit hours of teaching, and similar testimony by plaintiff's witness Jean Scurlock, renders the contract ambiguous and raises an issue of fact which must be determined by a jury. I doubt that either the plaintiff or Dr. Scurlock really intended to say that the full-time faculty member's "place" consisted of 15 credit hours of classroom teaching and nothing more. If their testimony is to have any reasonable meaning at all, it was that 15 hours was a normal full-time teaching load, which agrees with other evidence in the case. But if their testimony is to be given the literal meaning that the majority

opinion gives to it, it is so obviously and patently wrong and unreasonable, so contradictory to the basic written contract between the district and the plaintiff, that it cannot be considered to raise any genuine issue of fact. Not every unreasonable, obviously incorrect statement by a witness can be regarded as substantial evidence.[3] Reasonable men could not accept the hypothesis that the "place of a full-time faculty member" in the context of this case consisted of 15 credit hours of classroom teaching and nothing else. The trial judge was not required to have such a capacious swallow.

To take another approach which leads to the same result, the *parol evidence rule* will not allow the "understanding" of a party to vary or contradict the written contract. Absent the testimony of plaintiff's "understanding" of the meaning of "place", there would have been no ambiguity in the written contract. Plaintiff's testimony of her "understanding" *created* the ambiguity. Parol evidence is not admissible for that purpose. Parol evidence is admissible only to resolve ambiguities. (The parol evidence rule is not a procedural rule governing the admission or exclusion of evidence, but is a rule of substantive law of contract interpretation.) 4 S. Williston, A Treatise on the Law of Contracts, §§ 631, 632A (3d ed. 1961).

---

**2.** The furloughing of the plaintiff followed the adoption by the District of a Master Plan in 1975. The Master Plan adopted as a goal a 55–45 ratio between full-time faculty members and part-time faculty members. Throughout the five-campus system a considerable number of full-time faculty members were furloughed. In the Social Science department in which plaintiff taught there were 8.75 too many full-time faculty members, although only plaintiff and one other were actually furloughed and that not until 1979.

While the services of a certain number of full-time faculty members are necessary, part-time faculty members bring a useful dimension to the faculty. Use of part-time faculty members saves payroll money, allows for greater flexibility in scheduling classes, and brings to the classroom, in many cases, the practical workaday experience of a teacher who comes from the world of the journeyman rather than academia.

**3.** The general principle is thus stated in *Hill v. Illinois Terminal Co.,* 100 S.W.2d 40, 47 (Mo. App.1937):

The rule which requires us, in considering a demurrer to the evidence, to take plaintiff's evidence as true and to give him the benefit of every reasonable favorable inference arising from all the evidence and to disregard defendant's evidence where it conflicts with plaintiff's evidence, does not go so far as to require us to disregard the dictates of common reason and to accept as correct or true that which obviously, under all the circumstances in evidence, cannot be correct or true, nor does it require us to give plaintiff the benefit of any other than reasonable inferences.

*See also Probst v. Seyer,* 353 S.W.2d 798, 802 (Mo.1962); *Brawley v. Esterly,* 267 S.W.2d 655, 659 (Mo.1954); *Grube v. Associated Dry Goods, Inc.,* 663 S.W.2d 310, 311 (Mo.App.1983).

The meaning of this regulation is simply that if the district elects to add a full-time faculty member in a given department, a faculty member who has been furloughed within the preceding two years has the first refusal of the appointment. The district has not violated that requirement by having 15 credit hours taught by one or more part-time faculty members.[4] The trial judge was correct in holding that to be so as a matter of law.

I do not think, either, even under plaintiff's interpretation of the contract, that plaintiff proved that there were 15 credit hours of Social Science courses taught during the 1981 spring term. I will not expand on that, however.

---

4. By plaintiff's theory, there could never be more than one part-time faculty member in any department so long as there were in the wings non-probationary faculty members who had been placed on probation in the preceding two years—this because for every 15 hours the furloughed non-probationary teacher would have first call. A part-time teacher could only have any classes, less than 15 hours, left over.