Victoria Ann HOLT,
Petitioner–Respondent,

v.

Robert Dale HOLT,
Respondent–Appellant.

No. 15970.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 21, 1989.

John S. Pratt, Pratt & Fossard, Springfield, for respondent-appellant.

Robert S. Wiley, Crane, for petitioner-respondent.

FLANIGAN, Presiding Judge.

This action for dissolution of marriage was instituted by Victoria Holt, petitioner in the trial court and respondent here, against her husband Robert Holt, respondent in the trial court and appellant here. The parties, who will be referred to by their first names, were married on July 4, 1978, and separated on May 4, 1987, when this action was filed. One child, Matthew, was born of the marriage on December 27, 1979.

After the trial, the trial court made findings of fact and entered a judgment which dissolved the marriage, awarded primary custody of Matthew to Victoria "subject to rights of visitation and partial custody rights" of Robert which were set forth in detail, ordered Robert to pay $250 monthly for the support of Matthew, divided marital and nonmarital property, made provision for payment of marital debts, and provided for the disposition of the marital residence. Neither party was awarded maintenance or attorney fees. Robert appeals.

Robert contends on appeal that the trial court erred: (a) in failing to find Victoria in contempt; (b) in awarding custody of Matthew to Victoria and in failing to award Robert joint custody; (c) in awarding Victoria a disproportionate share of the marital property; and (d) in ordering Robert to pay medical insurance on Matthew and any bills not covered by insurance.

■ Robert's first point is that the trial court erred in failing to find Victoria in contempt. Prior to the trial, Robert filed a "Motion to Cite Petitioner for Contempt of Court." That motion was never argued to the court and no ruling was made thereon. "Since lack of a specific ruling preserves nothing for review, this court need not consider a point upon which no ruling has been made." *Manner v. H.E.T., Inc.*, 739 S.W.2d 724, 727[3] (Mo.App.1987). See also *Hayes v. Hatfield*, 758 S.W.2d 470, 475[9] (Mo.App.1988); *Vandever v. Junior College District of Metropolitan Kansas City*, 708 S.W.2d 711, 720[19] (Mo.App. 1986); *Owsley v. Owsley*, 34 S.W.2d 558, 559[2] (Mo.App.1931). Robert's first point has not been preserved for appellate review.

■ Robert's second point is that the trial court erred in awarding custody of Matthew to Victoria. Robert's third point is that the trial court erred in failing to award Robert joint custody of Matthew. These two points will be considered together.

Prior to their separation, the parties made their home in Stone County. Robert was employed at Burlington Northern Railroad in Springfield and his annual salary exceeded $30,000. Victoria was employed at Tracker Marine in Springfield as an executive secretary. On November 17, 1987, Victoria's job was eliminated. She was unable to find employment in Springfield and sought employment elsewhere "in the marine industry." She obtained a position with Hydra Sports in Tennessee and on

December 7, 1987, she and Matthew moved to Brentwood, Tennessee. Her annual salary at Hydra Sports is $27,000 and her position is that of marketing coordinator.

Monica, Victoria's 15–year–old daughter by a prior marriage, lives with her mother and Matthew. There was evidence, which the trial court believed, that over a period of several years prior to leaving the Stone County home, Monica was molested by Robert.

Matthew is in good health and attends school in Brentwood. Victoria testified that she drops Matthew off at 7:30 a.m. and picks him up at 5:30 to 6 p.m. The school hours are 8 a.m. to 3:30 p.m. When he is not in class Matthew is under the care of a program at the school supervised by the YMCA. In Brentwood Matthew lives with his mother and his half-sister in a three-bedroom house which Victoria rents. Victoria testified that it is 450 miles from Springfield to Brentwood, Tennessee. Although weather conditions prevented Victoria from bringing Matthew to Springfield to see his father during the 1987 Christmas holidays, Victoria, at her own expense, brought Matthew to Springfield for a weekend visit with Robert almost every month preceding the trial. Matthew spent two weeks in July 1988 with Robert and other relatives in Springfield.

There was evidence, which the trial court believed, that Robert had exhibited violence toward Victoria in the presence of Matthew. On one occasion, at the house in Stone County, Robert knocked Victoria to the floor and kicked her in the stomach while she was lying there. Matthew was present on that occasion. On another occasion Robert struck Victoria in the face and caused Victoria and Matthew to "flee" from the home. Robert indulges excessively in alcohol and occasionally uses marijuana. On more than one occasion Robert threatened to kill Victoria. At one time Robert threatened to burn the house so that he could collect the insurance. Victoria testified that he told her that "he could

knock me out and I would be in it and then it would be an accident."

Robert argues that the fact that Matthew lives in Tennessee prevents him from seeing frequently his two sets of grandparents who live in the Springfield area. He also argues that Victoria's present employment requires that she be away from home overnight on occasions.

The scope of appellate review of the trial court's order with respect to the custody of Matthew is governed by Rule 73.01(c)[1] and *Murphy v. Carron,* 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). See *Petty v. Petty,* 760 S.W.2d 555, 556 (Mo.App.1988). The judgment of the trial court is to be sustained unless there is no substantial evidence to support it or unless it erroneously declares or applies the law or is against the weight of the evidence. The controlling factor is the best interests of the child. § 452.375.2. "In our highly mobile society it would be unrealistic to inflexibly confine a custodial parent to a fixed geographical area if removal to another jurisdiction was consistent with the best interests of the minor child." *In re Marriage of Bard,* 603 S.W.2d 108, 109 (Mo.App.1980). See also *In re Marriage of Dusing,* 654 S.W.2d 938, 942[2] (Mo.App.1983).

The trial court's judgment awarded Robert substantial visitation rights, including four weeks during the summer months, visitation during the Christmas school vacation, and during the school Spring break. Robert was also given "access by telephone at all reasonable times to speak with [Matthew]." Robert's second and third points have no merit.

◼ Robert's fourth point is that the trial court erred in awarding Victoria, as her share of the marital property, "$20,000 more" than it awarded Robert. Considering all relevant factors enumerated in § 452.330.1, this court finds no merit in this point. In addition to misconduct on the part of Robert set forth earlier, he was guilty of other misconduct, including harassing Victoria by telephone calls to her

**1.** All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1986, V.A.M.S.

office at Tracker Marine. Earlier in the marriage his harassment of her caused her to quit her position at Burlington Northern Railroad where her monthly salary was $2,400. Victoria received severance pay equal to 18 months' salary which she devoted to family purposes. Earlier she had contributed to the family over $20,000, representing proceeds from the sale of the house she owned prior to the marriage. Robert's fourth point has no merit.

 Robert's fifth point is that certain portions of the trial court's judgment are indefinite and unenforceable. Robert refers to one portion of the judgment reading: "Respondent shall maintain at all times adequate hospitalization, medical, and dental insurance on the minor child and shall pay any hospital, medical and dental bills not covered by such insurance."

In *Newport v. Newport*, 759 S.W.2d 630 (Mo.App.1988), this court held that a provision of a judgment requiring the father "to pay all medical and dental bills ... on said children" was "so vague as to be unenforceable" and was void. The court said, at 637:

> "As a general rule, a judgment or decree for child support must be sufficiently certain in its terms to be capable of enforcement by execution in the manner provided by law, and the decree must be in such form that the clerk may issue an execution upon which an officer is able to execute without requiring external proof and another hearing.... Likewise, it has been held that orders requiring payment of unspecified medical expenses are unenforceable because external proof is required to ascertain the specific amount to be collected."

To similar effect see *Pettigrew v. Pettigrew*, 619 S.W.2d 364, 365[1] (Mo.App. 1981); *Meyer v. Meyer*, 599 S.W.2d 6, 7[1,2] (Mo.App.1980); *Ravenscroft v. Ravenscroft*, 585 S.W.2d 270, 273[4,5] (Mo.App. 1979); *Sunderwirth v. Williams*, 553 S.W.2d 889, 894[5,6] (Mo.App.1977); *Rodden v. Rodden*, 527 S.W.2d 41, 43–44[6–8] (Mo.App.1975).

The quoted portion of the trial court's judgment lacks specificity and is unen-

forceable. Accordingly said portion is deleted. The cause is remanded to the trial court with instructions to amend the judgment by inserting, in lieu of said deleted portion, a provision, specific in monetary terms, imposing upon Robert responsibility for the payment of the premium for adequate hospitalization, medical, and dental insurance on the minor child and to make specific provision with regard to the payment of any hospital, medical, or dental bill incurred by Matthew or on his behalf which is not covered by such insurance. The trial court may, in its discretion, receive evidence material to the making of said amendment.

Other points raised by Robert have no merit and do not deserve discussion. All portions of the judgment, except that portion deleted as mentioned in this opinion, are affirmed and the cause is remanded for further proceedings consistent with this opinion with respect to the amendment of the judgment.

It is so ordered.

MAUS and PREWITT, JJ., concur.