William MOUTRAY, Naomia Moutray, and William Ray "Billy" Moutray, Plaintiffs–Appellants,

v.

**PERRY STATE BANK, Defendant–Respondent.**

No. 52608.

Missouri Court of Appeals, Eastern District, Northern Division.

Feb. 16, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 15, 1988.

Application to Transfer Denied May 17, 1988.

---

Robert M. Clayton, Hannibal, for plaintiffs-appellants.

C. David Henderson, New London, for defendant-respondent.

PER CURIAM.

Plaintiffs appeal from the judgment of the trial court in favor of defendant-respondent declaring respondent was entitled to collect on certain promissory notes made by appellants. We affirm.

Appellants William Moutray, his wife Naomia, and their son Billy Moutray, executed certain promissory notes in favor of respondent Perry State Bank. Appellants pledged various items as security for the promissory notes. By written agreement one of the notes was secured by milo as collateral. Milo is an early growing grain that is used primarily as feed for livestock.

The milo appellants pledged as collateral was awarded to them under the Federal Government's Payment In Kind Program and under the terms of the program was subject to certain restrictions. A farmer who received P.I.K. (payment in kind) grain could feed the grain to his own livestock or sell it to other farmers but was prohibited from selling it to grain elevators.

After appellants were awarded the milo, they made arrangements to have it stored on the farm of Dallas Mitchell. Mitchell has been a farmer for over thirty years and has a grain dealer's license. He also operates a small trucking enterprise.

Mitchell acted as appellants' broker in selling the grain. Mitchell would sell quantities of the grain at appellants' asking

price, deliver it to the farmers who purchased the grain, and collect the fee. After deducting his transportation expenses, Mitchell would execute a check representing each sale in the names of appellant William Moutray and the respondent bank. The proceeds of the sales were then applied towards appellants' promissory note. Under the arrangement, it was Mitchell's understanding that the milo would be removed from his storage bins by July 1984 to make way for the wheat harvest.

The promissory note which was secured by the milo was due in full on June 23, 1984, but was not paid. As of September 3, 1984 all of the notes were overdue.

The evidence showed milo as a feed grain is influenced by the price and availability of other feed grains. Appellants received $3.25 per bushel for their last voluntary sale of milo in August 1984. Afterwards, Mitchell urged appellants to sell the remaining 5300 bushels of milo before the competing wheat crop was harvested. Appellants declined, refusing to accept less than $3.05 per bushel for the milo.

Between August and October 1984 the milo market dropped. In August 1984 when Mitchell advised appellants to sell, milo was valued at $3.00 per bushel. Following the wheat harvest the price for milo dropped to $2.00 per bushel. At this time the bank was made aware that appellant William Moutray had been removing quantities of the milo from storage, without the bank's approval, for purposes other than for sale.

At the first of September, Mitchell offered respondent bank $2.00 per bushel for the milo. The bank accepted this offer and sold the remaining 5300 bushels of milo to Mitchell by private sale. Appellants were not given written notice prior to the sale.

The bank determined that $2.00 per bushel was a price representative of the fair market value of milo at the time of the transaction by checking the cash market for milo at the grain elevators. Through its transactions with its customers the bank was aware of the price farmers were paying for the grain.

The evidence showed that price quotations are given by the grain elevators on every business day. Grain elevators realize a handling profit by charging a higher price for milo than the price for which they purchased the grain. Farmers desiring to buy P.I.K. milo, which could not be sold to the grain elevators, would generally pay more than the elevators would purchase the grain for but less than the elevators charged to sell the grain. The evidence was, however, that at the time of the transaction due to the competing wheat harvest farmers were paying about the same price as the elevators.

Moreover, in addition to paying $2.00 per bushel, Mitchell agreed to account for all of the milo received under the Payment In Kind Program. The $2.00 per bushel sale price included an allowance for Mitchell's trucking expenses. The evidence was that discounting for transportation expenses is a standard practice in the grain business.

Mitchell began removing the milo from the storage bins on September 3, 1984 and disposed of all of the grain by October 10, 1984. After making a determination of the quantity sold, Mitchell delivered a check to the bank on October 29, 1984 in the amount of $10,724.30, payable to the bank and appellant William Moutray. The evidence showed Mitchell did not make a profit on the resale of milo.

Thereafter, appellants brought this declaratory judgment action seeking the trial court to declare all debts owed by appellants to the bank cancelled on grounds the bank failed to provide appellants written notice of the sale of collateral and did not conduct the sale in a commercially reasonable manner.

In reviewing the judgment of the trial court in a declaratory judgment action, an appellate court will sustain the decree or judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Abco Tank & Manufacturing Co. v. Federal Insurance Co.*, 550 S.W.2d 193, 197 (Mo. banc 1977). The court as trier of fact determines the credibility of witnesses and

may reject or accept testimony even if un-contradicted. *Willhite v. Marlow Adjust-ment, Inc.,* 623 S.W.2d 254, 260 (Mo.App. 1981).

In their first point on appeal appellants contend the trial court erred in declaring that respondent bank could collect the defi-ciencies on appellants' promissory notes as appellants were not given notice of the sale and appellants contend the sale of collat-eral was not conducted in a commercially reasonable manner.

The respondent bank did not give written notice to appellants prior to the sale of the P.I.K. milo. According to § 400.9–504(3) of Missouri's Commercial Code, however, a secured party is not required to give notifi-cation of his intended disposition of collat-eral where the collateral "is perishable *or threatens to decline speedily in value* or is of a type customarily sold on a recog-nized market." § 400.9–504(3), RSMo 1986 (emphasis added).

■ The trial court determined the milo was collateral that threatened to decline speedily in value and thus notice was not required. The evidence supported this de-termination. Appellants were warned by Mitchell, the farmer who stored the grain, that they should sell the milo before the competing wheat crop was harvested. By September the wheat harvest had caused the price for milo to drop by a dollar per bushel. By appellant William Moutray's own testimony the price for milo would have been even more dramatically reduced by the corn harvest in late October. We find no error in the trial court's determina-tion that the value of the milo threatened to decline speedily in value and thus that notice of the sale was not required.

■ Appellants further contend respon-dent did not comply with the notice provi-sion contained in the security agreement. Appellants' contention is without merit as the notice provision referred to addresses notice upon acceleration of the promissory note and did not enhance the notice require-ments under the Uniform Commercial Code. The trial court correctly concluded acceleration was not at issue as all of the notes were already due in full.

Even where notice of the sale of collat-eral is not required the disposition must still be commercially reasonable. Section 400.9–504(3), RSMo 1986, provides that ev-ery aspect of the disposition of collateral upon default must be commercially reason-able.

■ The commercial reasonableness of a sale is a question of fact. *Lendal Leasing v. Farmer's Wayside Stores,* 720 S.W.2d 376, 380 (Mo.App.1986). That a better price could have been obtained at a differ-ent time or in a different market is insuffi-cient of itself to establish that the sale was not commercially reasonable. § 400.9–507(2), RSMo 1986. The Code does not define "commercially reasonable" but § 400.9–507(2) offers some guidelines. A secured party has sold in a commercially reasonable manner if he "sells the collat-eral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformi-ty with reasonable commercial practices among dealers in the type of property sold." § 400.9–507(2), RSMo 1986.

■ The evidence was respondent ac-cepted Mitchell's offer of $2.00 per bushel for the milo without taking other bids. Un-der the circumstances existing at the time of the transaction, however, we agree with the trial court's determination that respon-dent acted in a commercially reasonable manner.

Respondent did inquire as to the fair market value for milo by investigating the price quotations at the grain elevators and was aware of the price being paid by farm-ers from dealing with its bank customers. The price for milo was dropping and re-spondent was concerned over reports that appellants had removed grain from the storage bins for purposes other than sell-ing the grain to pay off the promissory note. Further, Mitchell wanted the milo removed from his storage bins to make way for the wheat harvest.

The $2.00 per bushel price paid by Mitch-ell was the price quoted by the grain eleva-tors at the time of sale and, according to the evidence, coincided with the price paid

by farmers for P.I.K. milo. Moreover, in addition to paying $2.00 per bushel for the milo, Mitchell agreed to account for all the milo appellants received under the Payment In Kind Program.

After consideration of the record before us we concur in the trial court's determination that respondent bank acted reasonably in applying its methods for the sale of collateral and that the price obtained from the sale was reasonable. Point denied.

In their second point appellants contend the court's order exceeded respondent's prayer for relief. Respondent moved to dismiss appellants' action for declaratory relief and in its answer affirmatively stated that the disposition of collateral was conducted in a commercially reasonable manner and that all provisions of the Uniform Commercial Code were complied with. In its order, the trial court declared respondent was entitled to collect on the promissory notes as they were in default. The order then included a list of the amounts due on each note. Appellants contend the trial court erred in ruling beyond respondent's prayer for dismissal.

■ Missouri adopted the Uniform Declaratory Judgments Act in 1935, § 527.010 et seq. RSMo. Under this Act Missouri Courts are given discretionary authority "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." § 527.010, RSMo 1986. Relief under the Declaratory Judgment Act "should be complete." *Mayor, Councilmen, and Citizens of the City of Liberty v. Dealers Transport Co.*, 343 S.W.2d 40, 43 (Mo. banc 1961). It is improper to decide the merits of a properly pleaded declaratory relief action by dismissal. *Jones v. Garden Park Homes Corp.*, 393 S.W.2d 501, 506 (Mo.1965); *Strype v. Lewis*, 352 Mo. 1004, 180 S.W.2d 688, 690 (1944). The proper practice in a case brought under the Declaratory Judgment Act is for the court to enter a decree defining the rights of the parties under the issues made whether the action is decided for or against the plaintiff. *Strype, supra*, 180 S.W.2d at 690; *Dyas v. Dyas*, 165 S.W.2d 317, 322 (Mo. App.1942). "[I]f the court finds against the contention of the plaintiff, it will, instead of dismissing the proceeding, render a judgment in favor of the contention of the defendant." 22 Am.Jur.2d *Declaratory Judgments* § 99 p. 966 (1965). The trial court did not err in rendering judgment in favor of respondent's contention.

■ As to the trial court's declaration of the status of the promissory notes and the amounts owing, the evidence of the terms of the notes and amounts due were before the court and were tried by the implied consent of the parties. In accordance with Rule 55.33(b), the pleadings were amended to conform to the evidence. The order of the court was within the record issues pleaded. Point denied.

In their final point appellants contend the trial court abused its discretion and the judgment of the trial court was against the weight of the evidence as the weight of the evidence showed respondent did not act in a commercially reasonable manner. As discussed previously, the evidence supported the trial court's conclusion that the disposition of collateral by respondent was commercially reasonable. Point denied.

Judgment affirmed.

All Judges concur.