**LAKE OZARK CONSTRUCTION INDUSTRIES, INC., et al., Appellants,**

v.

**NORTH PORT ASSOCIATES, et al., Respondents.**

**No. WD 46629.**

Missouri Court of Appeals, Western District.

June 1, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 27, 1993.

Application to Transfer Denied Sept. 28, 1993.

---

Mark G. Arnold, Husch & Eppenberger, St. Louis, Alex Bartlett, Jefferson City, for appellants.

Curtis, Oetting, Heinz, Garrett & Soule, P.C., J. Patrick Chassaing, Thomas W. Dietrich, St. Louis, for respondents.

Before LOWENSTEIN, C.J., and TURNAGE and BRECKENRIDGE, JJ.

LOWENSTEIN, Chief Judge.

The appeal here basically concerns a motion to dismiss a suit for a declaratory judgment the appellant wanted to determine the right to perform construction in accordance with two contracts.

This case involves multiple respondents and appellants. One respondent, North Port Associates, Inc. (North Port), owns approximately 1,100 acres of property along the Lake of the Ozarks and the Osage River in Miller County. North Port is

a corporation of which there are four shareholders. North Port intended to develop and construct a residential resort community consisting of condominiums, marina, hotel, office and retail space as well as golf courses. North Port and appellant, Lake Ozark Construction Industries, Inc. (Lake Ozark), a wholly owned subsidiary of appellant, Everett Holding Company (Everett), entered into a contract calling for Lake Ozark to do all of the site preparation and infrastructure work on the project, except for the actual construction of the golf course in question, an Arnold Palmer course. Lake Ozark and North Port agreed Lake Ozark would do only site preparation on the golf course. North Port warranted the agreement would bind its assigns and that it controlled all aspects of the project. Respondent, North Port Golf Associates (Golf Associates), a limited partnership under the same ownership as North Port, would develop the golf course. The managing general partner of Golf Associates is North Port Equities (Equities), a corporation.

North Port and Lake Ozark entered into a two page agreement on November 8, 1989. The agreement had two provisions. One called for Lake Ozark to transfer a thirty-five acre parcel of land which North Port wanted to include in the overall project. The other provision provided North Port would contract solely with Lake Ozark for all site preparation and infrastructure work. The Lake Ozark petition stated the details of these provisions. Taken as true based on the standard of review when a court grants a motion to dismiss, this court discerns the following facts. North Port could not fit the entire golf course on the land it had assembled without including the thirty-five acre tract owned by Lake Ozark. Under the first provision of the contract, Lake Ozark agreed to sell and transfer to North Port the thirty-five acre piece of land subject to Lake Ozarks' "... satisfaction as to its rights and obligations pursuant to the terms and conditions of such partnership agreements, which satisfaction will not be unreasonably withheld." In return, Lake Ozark was to receive an equity interest in the overall project. When the parties could not consummate the sale and agree on the equity interest of Lake Ozark, as an interim measure, Lake Ozark sold the thirty-five acres to North Port, taking a note for $105,000 and deed of trust. In June 1990 North Port paid off the note. Everett, Lake Ozarks' parent corporation, paid a like amount for a limited partnership interest in Golf Associates. The other part of this agreement stated as a condition of the Lake Ozark transfer of the property, North port agreed, "it will contract solely" with Lake Ozark, "for all site preparation and infrastructure work needed on the property," except for the Arnold Palmer golf course where Lake Ozark would be limited to site preparation work, "for a specific golf construction company to construct the actual golf course." North Port agreed, "it will not engage, and it will cause any other entity ... of the Project or any phase thereof, not to engage, any contractor other than [Lake Ozark] for the performance of the site preparation and infrastructure work on the project ..."

After Lake Ozark transferred the land and the terms jelled as to Lake Ozark becoming a limited partner in Golf Associates Limited Partnership, a second agreement followed. In June 1990, Golf Associates, as owner, and Lake Ozark, as the contractor, entered into a standard form American Institute of Architects contract for the construction of just the golf course in question. That contract expressly provided any dispute between the parties "arising out of, or relating to the Contract, or the breach thereof, shall be decided by arbitration ..." The agreement included a provision that the contract itself constituted the entire agreement and no other documents were incorporated. A dispute arose between Golf Associates and Lake Ozark over construction related to the golf course. That dispute is currently being arbitrated under that contract provision. It is the dispute between Golf Associates and Lake Ozark that triggered this suit.

Lake Ozark filed the suit which is the subject of this appeal. The entire petition covered many additional claims of Lake Ozark and its allies against North Port and

its allies, but only four matters in the dismissed petition were before the court. Count I sought a declaratory judgment so the November 1989 agreement between Lake Ozark and North Port would remain in full force. Count II asked the court to impress an equitable lien on all the project property to ensure Lake Ozark performed and received payment for project construction. Count III, filed on behalf of Everett, Lake Ozark's parent, sought access by a limited partner to the books and records of Golf Associates. Count IV asked for recision of the sale of the thirty-five acre tract if the court found the November agreement unenforceable, or, in the alternative, an equitable lien on the thirty-five acre tract. Pursuant to Rule 74.01(b), the trial court sustained a motion to dismiss all four counts. The appellants as to this portion of the entire dispute are Lake Ozark and Everett. The respondents are North Port, Golf Associates and Equities.

At the very heart of this appeal is the issue contained in Count I, of whether Lake Ozark will, under the November 1989 agreement retain the right as sole contractor on the whole project, or whether the June 1990 agreement between Lake Ozark and Golf Associates negated the earlier agreement or subjected any disputes as to construction of anything in the project done by Lake Ozark to arbitration as opposed to court relief.

This court will address the appeal as to Count I. Next, the opinion deals with Counts II and IV, which the trial court denied because the judgment declared the declaration of rights under the contract in the respondents' favor.

The last part of the opinion deals with Everett's prayer as a limited partner, under Count III for an inspection of partnership records against Golf Associates, and its managing general partner, Equities.

### I.

In Count I, Plaintiffs Everett and Lake Ozark sought a declaratory judgment as to the status of the November 1989 contract against the relevant defendants North Port, Equities and Golf Associates. The petition quoted at length from the North Port contract with Lake Ozark, particularly those portions describing the 1,100 acre project area, the contents of the project (300 condominiums, marina 260 room hotel, homes golf courses, sports camp, industrial park, etc.), and language regarding site preparation and infrastructure work on the entire project. The parties accomplished these projects via a contract between North Port and Lake Ozark, which conditioned the agreement upon Lake Ozarks' transfer of the thirty-five acre parcel to North Port. The petition recounts negotiations whereby Lake Ozark would make an equity contribution to an entity involved in the entire project, such contribution in an amount equal to the value received for the thirty-five acre tract now included in the project area. The petition told of how the parties ultimately agreed on Lake Ozark becoming a limited partner in Golf Associates for the amount received for the land. The petition stated Lake Ozark and Everett "... relied upon the provisions" of the November agreement giving them "exclusive rights to be the contractor ..." The petition alleged North Port had "taken the position ... the Agreement is of no effect and is not in force."

The appellants prayed the trial court declare the November agreement in full force and effect and, thus, declare their right to perform the construction work. The respondents filed a motion to dismiss which stated any work done, or to be done, for Golf Associates was subject to the arbitration provisions of the June 1990 contract. Lake Ozark agreed to settle disputes with Golf Associates through arbitration. In fact, Lake Ozark and Golf Associates have a dispute in arbitration now. However, North Port then contended that with regard to any other work, the parties never implemented the November agreement so it ceased to exist and, in any event, the contract between Golf Associates and Lake Ozark superseded the Lake Ozark North Port contract. The motion to dismiss referred to the November contract as "merely an agreement to enter into separate

agreements governing any work to be done."

In sustaining the defendants' motion, the court's final order found the June 1990, agreement "contains an arbitration clause and thereby any claims as to [Golf Associates] is subject to arbitration. Therefore, arbitration needs to determine initially the matters raised in Count I." By implication, the judgment also seemed to relieve the developer, North Port, of any contractual obligations to use Lake Ozark as a contractor, or that any decision to use Lake Ozark as a contractor on any phase of the Project, was subject to arbitration.

■■■ Review here is of the granting of a motion to dismiss a petition for declaratory relief. This court must accept as true all well-pleaded facts and inferences. The sufficiency of such petition hinges on whether the parties show entitlement to a declaration of rights or status on the pleaded facts. *Teat v. Director of Revenue*, 806 S.W.2d 754, 757 (Mo.App.1991). If the averments of the petition show such entitlement, then it is improper to dismiss the petition. *Washington Univ. v. Royal Crown Bottling Co. of St. Louis*, 801 S.W.2d 458, 463 (Mo.App.1990). This court must determine whether the trial court's legal conclusion was correct. *Von Seggern v. 310 West 49th St., Inc.*, 631 S.W.2d 877, 881 (Mo.App.1982).

■■■ Under § 527.010, RSMo 1986, the courts of the state have the power "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Those declarations have the force and effect of a final judgment. § 527.020 RSMo 1986. Courts may determine the present rights of parties to a contract, *St. Paul Fire & Marine Ins. Co. v. Medical Protective Co.*, 675 S.W.2d 665, 667 (Mo.App.1984), either before or after a breach. § 527.030 RSMo 1986. Although the court dismissed the suit for declaratory judgment, the court did define the rights of the parties. *Moutray v. Perry State Bank*, 748 S.W.2d 749, 753 (Mo.App.1988). Indeed, as here, the purpose of the Declaratory Judgment Act, §§ 527.010, 527.140 RSMo 1986, is "to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." *Washington Univ.*, 801 S.W.2d at 463. It is desirable that the courts establish the relationship of the parties because of a continuing relationship and future acts which depend on the outcome. *Id.* The purpose of a declaratory judgment is to dispel uncertainty before actual loss occurs. *King Louie Bowling Corp. v. Missouri Ins. Guar. Ass'n*, 735 S.W.2d 35, 38 (Mo.App.1987). A declaratory judgment is not a panacea for all legal ills. *Id.* at 38. To plead relief in the form of a declaratory judgment requires three elements: "1) existence of a justiciable controversy admitting of specific relief by decree; 2) the presence of a legally protectable interest; and 3) the existence of a question ripe for judicial decision." *Id.*

■■■ The court's ruling has the effect of allowing the subsequent agreement between Lake Ozark and the Golf Associates' limited partnership for the construction of a golf course, to negate and totally nullify an earlier agreement for the exclusive right for construction of the entire project between Lake Ozark and North Port. Simply put, the June agreement between Golf Associates, as owner, and Lake Ozark, as contractor, was to build a golf course. Any disputes as to construction between Lake Ozark and Golf Associates were to go to binding arbitration. The fact there was also language this contract was the entire agreement as between Lake Ozark and Golf Associates, and there were no other written agreements "... pertaining to the subject matter of the Contract Documents ...", does nothing to justify the quantum leap to a legal conclusion this agreement somehow put to arbitration to determine the legal relationship between Lake Ozark and North Port or its successors or assigns under the previous November contract. Parties without an agreement to arbitrate cannot require each other to submit a dispute to arbitration. *Village of Cairo v. Bodine Contracting Co.*, 685 S.W.2d 253, 258 (Mo.App.1985).

The judgment as to the relief prayed against North Port for in Count I is reversed. There appears to be no reason to remand for a trial to declare the legal relationship between Lake Ozark and North Port, or its assigns, as to rights and duties for the project, other than this particular golf course. Therefore, as to defendants North Port, Equities and Golf Associates the matter is remanded for the trial court to enter judgment in favor of Lake Ozark on Count I, except for the golf course property covered in the contract of June 1990, with Golf Associates.

## II.

Of necessity, the judgment as to Count II, equitable lien, and recision, Count IV for recision of the land sale, are reversed, based on the ruling this day on Count I. This does not mean that on remand there is a duty for the trial court to fashion a judgment with either of these remedies. This court's decision to reverse as to Counts II and IV does not become the law of the case. A plaintiff in a declaratory judgment may also seek, without destroying the action, coercive relief. *Ward Parkway Shops, Inc. v. C.S.W. Consultants, Inc.*, 542 S.W.2d 308, 311 (Mo.App. 1976). In this opinion and under the ruling on the appeal, the court declines further discussion as to these remedies, the matter now being for the trial court.

## III.

To the credit of counsel on both sides, the parties resolved during briefing the point pertaining to Count III, the prayer for an accounting and inspection of Golf Associates' books by limited partner, Everett. The trial court, as applicable here, dismissed as to Equities, not as to the defendant limited partnership, Golf Associates. As to Golf Associates, Everett's petition under Count III was a live action. Under § 359.081, RSMo 1986, a limited partnership may be sued in the partnership name. Under the statute, Everett had a right to inspect and sue Golf Associates. Everett was concerned the court dismissed as to Golf Associates. Because Golf Asso-

ciates was not, in fact, dismissed, this court need not discuss the matter further.

The judgment as to Count I is reversed and remanded for entry of judgment in favor of Lake Ozark and against the respondents for declaration of all rights except as to the golf course in question. Counts II and IV are reversed and remanded. Count III is affirmed.

Costs to be evenly divided.