**GENERAL AMERICAN LIFE INSURANCE COMPANY,**
**Plaintiff,**

v.

**Carol J. BARRETT, Personal Representative,**
**Appellant,**

**Larry G. Green and Donald G. Green, Respondents.**

**No. WD 45805.**

Missouri Court of Appeals, Western District.

Jan. 12, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied
March 2, 1993.

Douglas R. Horn, Lee's Summit, for appellant.

Ronald V. Mueller, Kansas City, for respondents.

Before TURNAGE, P.J., and BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

Carol J. Barrett, personal representative of the Estate of Tammy R. Green, appeals the trial court's order granting summary judgment for respondents, Larry G. Green and Donald G. Green. Barrett presents two points on appeal arguing that the trial court erred in granting summary judgment in favor of respondents because: (1) a genuine issue of material fact exists since Policy 1210 was not proven to have been adopted and in force; and (2) the beneficiary designation form, instructions and rules were incorporated into the policy of insurance and relied upon by Tammy R. Green. The judgment is reversed and the cause is remanded.

Tammy R. Green enrolled in a group life insurance program through her employer, Southwestern Bell, on May 16, 1988. A certificate of insurance in the amount of $120,000.00 was issued by General American Life Insurance Company (General American). At the time of her enrollment, Tammy R. Green completed a Southwestern Bell Corporation Beneficiary Designation Form designating Larry G. Green, her husband at the time, as primary beneficiary and Donald G. Green, her brother-in-law at the time, as contingent beneficiary.

Section C of the Beneficiary Designation Form completed by Tammy R. Green provides that the beneficiary designations are made pursuant to the Southwestern Bell Corporation Rules for Employee Beneficiary Designations (Rules). Tammy R. Green was provided with Instructions For Making Beneficiary Designations (Instructions) which also state that beneficiary designations are governed by the Rules. The Instructions direct the employee to read the Rules because they "constitute the contract between you and the ... program as to the manner in which distribution will be made at your death and set forth the rights, obligations, procedures and protections provided to you, your beneficiaries, the employing corporation, the programs and the program administrators." The Instruc-

tions, under the section titled "Distribution Rules Summary," state the following:

5. Divorce: If a share is provided for a person who is your spouse and you are not married to that person at your death, the designation of that person as a beneficiary will be treated as revoked before your death and the share provided will be distributed to your estate. If you intend that a divorced spouse receive a share, your beneficiary designation must be dated after the date your marriage was dissolved.

On page six, Section 3 of the Rules reads:

J. If, after the employee makes a beneficiary designation in favor of a person who is the employee's spouse, the employee is divorced or the marriage is annulled and the employee and beneficiary do not remarry and remain married at the employee's death, the beneficiary designation in favor of the employee's spouse is revoked on the date the marriage was dissolved, whether or not the beneficiary form refers to marital status, and the share of the former spouse shall belong and be distributed to the employee's estate;

The marriage between Tammy R. Green and Larry G. Green was dissolved on October 14, 1988. Tammy R. Green died on February 23, 1989. Tammy R. Green died without executing a post-dissolution beneficiary designation. Barrett, as personal representative, filed a claim to collect the proceeds of the life insurance policy in behalf of Tammy R. Green's estate. Her claim was not paid because General American required Larry and Donald Green to release their rights as designated beneficiaries, and they refused to do so. The Greens claim that, prior to Tammy R. Green's enrollment in the program, Policy 1210 was adopted as an amendment to Policy 7533 and that, under Policy 1210, the Rules do not apply to beneficiary determination until June 1, 1990. The Greens argue that because Tammy R. Green died before June 1, 1990, the Rules cannot be used to determine her beneficiaries. The language in the Rules regarding divorce is not stated in the body of Policy 1210. The Rules provide that if there is a conflict

between the provisions of the Rules and the provisions of the policy, the policy terms shall control.

On February 20, 1990, General American filed a Petition for Interpleader to determine who was entitled to the policy proceeds. Barrett and the Greens, the competing claimants for such proceeds, were joined as defendants. At the time it filed the petition, General American deposited with the court $130,001.00, which represented the policy proceeds plus interest. On June 6, 1990, the trial court discharged General American from further liability and ordered the defendants to interplead their competing claims to the funds deposited with the court. Both Barrett and the Greens filed cross-claims for declaratory judgment and motions for summary judgment. On December 27, 1991, the court entered summary judgment in favor of Larry G. Green and Donald G. Green. Barrett's cross-claim was denied.

Barrett argues in her first point on appeal that the trial court erred in granting summary judgment in favor of the Greens because a genuine issue of material fact arises out of the Greens' failure to prove that Southwestern Bell adopted Policy 1210. The existence of Policy 1210 is an essential element of the Greens' claim that the beneficiary designations by Tammy R. Green were not revoked as a result of the dissolution of the marriage of Tammy R. Green and Larry G. Green.

■ Review of summary judgment is conducted in the same manner as review of a court-tried case and the judgment will be sustained if, as a matter of law, it is sustainable on any theory. *Hayes v. Hatfield*, 758 S.W.2d 470, 472 (Mo.App.1988). The reviewing court must first determine whether there is a genuine issue of material fact which would require trial and then whether the judgment is correct as a matter of law. *Roberts Fertilizer, Inc. v. Steinmeier*, 748 S.W.2d 883, 886 (Mo.App. 1988). The moving party bears the burden of showing the party's entitlement to summary judgment as a matter of law. *Id.* The moving party, however, is not required to show by unassailable proof that it was

entitled to summary judgment. *Herron v. Whiteside*, 782 S.W.2d 414, 416 (Mo.App. 1989). In deciding whether an issue of material fact exists, the evidence of the party against whom summary judgment has been entered must be believed and all justifiable inferences drawn in that party's favor. *American Family Mut. Ins. Co. v. Lacy*, 825 S.W.2d 306, 313 (Mo.App.1991). The entire record is reviewed in the light most favorable to the party against whom summary judgment was entered. *Hayes*, 758 S.W.2d at 472.

■ Barrett argues that the Greens did not meet their burden of proving that they were entitled to summary judgment as a matter of law because they failed to present evidence that Southwestern Bell adopted Policy 1210. Barrett's argument is without merit. Rule 74.04(e), in pertinent part, requires the following:

When a motion for summary judgment is made and supported as provided in this Rule 74.04, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule 74.04, shall set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

■ Barrett failed to challenge the Greens' assertion in their motion for summary judgment that no genuine issue of material fact exists. Failure to respond to a motion for summary judgment with specific facts showing genuine material issues results in admission of the facts alleged. *Kessinger Hunter Management Co. v. Davis*, 782 S.W.2d 426, 430 (Mo.App.1989). In her suggestions in opposition to the Greens' motion for summary judgment, Barrett adopted the position that no genuine issue of material fact existed because the dispute merely involved document interpretation. Barrett again committed to this position when she asserted in the suggestions in support of her own motion for summary judgment that "this case is ripe for summary judgment in that the facts are not in dispute and the court's only task is

to interpret and apply the clear cut terms of the life insurance policy."

In her claim that the Greens failed to state sufficient facts upon which judgment could be granted, Barrett only challenges the adoption of Policy 1210. This challenge does not suffice to defeat the Greens' claim for two reasons. First, Barrett did not raise this argument before the trial court and, secondly, Barrett admitted in her suggestions in opposition to the Greens' motion for summary judgment that Southwestern Bell adopted Policy 1210. After admitting the adoption of Policy 1210, Barrett cannot take a contrary position on appeal. Also, Barrett's failure to argue in the trial court that Policy 1210 had not been adopted prevents her from raising it as an issue on appeal. *Mattes v. Black & Veatch*, 828 S.W.2d 903, 907 (Mo.App.1992). The Greens presented uncontradicted proof that Policy 1210 was in existence and adopted by Southwestern Bell. Point I is denied.

Barrett argues in Point II that the trial court erred in granting the Greens' motion for summary judgment because the beneficiary designation form, Instructions and Rules were incorporated into the insurance policy and relied on by Tammy R. Green at the time she made application for life insurance benefits. The Rules contained a provision that a spousal beneficiary designation is revoked upon divorce. Tammy R. Green was given the Instructions and Rules at the time she applied for life insurance and executed the beneficiary designation form.

 The reality of the relationship between parties to an insurance contract is "that the contract as set forth [in] the insurance policy often is practicably unintelligible and generally never read, whereas brochures and other material given out by the insurer are read and relied upon. . . ." *Crawford v. Mid–America Insurance Company*, 488 S.W.2d 255, 258 (Mo.App.1972) (quoting 13 Appleman, Insurance Law and Practice, § 7534). The insured has a right to rely on the wording contained in a pamphlet, brochure, or other material given out. *Id.* at 258. Materials

supporting and explaining an insurance policy, such as the certificate and descriptive brochures, which contain essential provisions to the contract found nowhere else are considered to be part of the insurance contract. *Behr v. Blue Cross Hosp. Service, Inc.*, 715 S.W.2d 251, 255 (Mo. banc 1986). *See also Morris v. Travelers Ins. Co.*, 546 S.W.2d 477, 486 (Mo.App.1976). The beneficiary designation form, Instructions and Rules received by Tammy R. Green were incorporated into Policy 1210 and became part of the insurance agreement since they contained provisions regarding beneficiary designation that were found nowhere else in the policy. The Rules govern Tammy R. Green's beneficiary designation unless a conflict exists between the terms of the Rules and the terms of Policy 1210. The terms of the policy control, per a provision in the Rules, if the terms of the two conflict.

The Greens argue that there is a conflict, in that provisions of Policy 1210 prohibit application of the Rules. They claim under the clear language of the policy the Rules did not take effect under Policy 1210 until June 1, 1990, fifteen months after Tammy R. Green's death. They argue the policy is clear and unambiguous, and the court must find the beneficiary to be the person Tammy R. Green named on the beneficiary designation form. The Greens further contend that Tammy R. Green intended to name the Greens as beneficiaries and that the beneficiary designation form doing so is clear and unambiguous.

 In construing an insurance policy, the court must apply general rules of contract construction because insurance policies are contracts. *Herpel v. Farmers Ins. Co., Inc.*, 795 S.W.2d 508, 510 (Mo. App.1990). A policy may only be construed using contractual rules of construction if the policy is ambiguous. *American Family Mut. Ins. Co. v. Ward*, 789 S.W.2d 791, 795 (Mo. banc 1990). If the policy is not ambiguous, the court cannot construe it but must enforce the express terms of the policy as it is written. *Rodriguez v. General Acc. Ins. Co.*, 808 S.W.2d 379, 382 (Mo. banc 1991).

The decision as to whether a policy is ambiguous is a question of law. *Maryland Cas. Co. v. Martinez*, 812 S.W.2d 876, 880 (Mo.App.1991). An insurance policy is ambiguous if it is fairly open to different interpretations. *Robin v. Blue Cross Hosp. Service, Inc.*, 637 S.W.2d 695, 698 (Mo. banc 1982). Ambiguity results when the policy contains duplicity, indistinctness or uncertainty of meaning. *Rodriguez*, 808 S.W.2d at 382. An ambiguity is patent if it arises through the analysis of the language of the agreement and latent if language, which is plain on its face, becomes uncertain upon application. *Vandever v. Jr. Coll. Dist. of Kansas City*, 708 S.W.2d 711, 717 (Mo.App.1986).

Contrary to the Greens' assertions, Policy 1210 is ambiguous. The ambiguity in Policy 1210 lies not in the choice of policy words or the meaning of those words, but in the policy's silence regarding the status of the Rules prior to June 1, 1990. Ambiguity results because there is no express statement in the policy that the Rules are or are not to be in effect prior to June 1, 1990. Section 12 of Policy 1210, the portion of the policy in dispute in this case, reads as follows:

Section 12. BENEFICIARIES.—An Employee's or Retired Employee's beneficiary is the person or persons designated by the Employee or Retired Employee under Group Policy No. 7533 filed with the records maintained by the Employer in connection with insurance hereunder. Any Employee or Retired Employee may change such beneficiary at any time by filing written notice thereof on such form with their Employer. Consent of the beneficiary shall not be requisite to any change of beneficiary.

After receipt of such written notice by the Employer, the change shall relate back and take effect as of the date the Employee or Retired Employee signed said written notice of change, whether or not the Employee or Retired Employee is living at the time of such receipt, but without prejudice to the Insurance Company on account of any payment made before receipt of such written notice.

**The following paragraph shall apply until June 1, 1990;**

If at the death of any Employee or Retired Employee insured hereunder, there shall be more than one designated beneficiary, then, unless such Employee or Retired Employee shall have specified the respective interests of such beneficiaries, the interest of such beneficiaries shall be several and equal. If any designated beneficiary shall predecease the Employee or Retired Employee, the rights and interest of such beneficiary shall thereupon terminate, unless the beneficiary designation states otherwise. If, at the death of the Employee or Retired Employee, there is no designated beneficiary as to all or any part of the insurance, then the amount of the insurance payable for which there is no designated beneficiary shall be payable to the estate of the Employee or Retired Employee, provided, however, that the Insurance Company may, in such case, at its option, pay such amount to any one of the following surviving relatives: wife, husband, mother, father, child or children, and payment to any one or more of such surviving relatives shall completely discharge the Insurance Company's liability with respect to the amount of insurance so paid.

**Effective June 1, 1990;**

**The Employee Beneficiary Designations Rules, adopted by the Policyholder and Insurance Company, as may be amended from time to time, shall be applied by the Insurance Company in determining the beneficiary or beneficiaries entitled to Payment of benefits under this Policy and the procedure for making payment of benefits under this Policy.**

If an individual policy shall have been issued pursuant to application made in accordance with Section 8 hereof, the designation by the Employee or Retired Employee of a beneficiary under such individual policy, other than the beneficiary of record of the Employee or Retired Employee hereunder, shall, notwithstanding any other provision of this Section to the contrary, effect a change of

beneficiary hereunder to the beneficiary of record under such individual policy, regardless of whether or not written notice of such change is filed with the Employer.

(emphasis added).[1]

The ambiguity in the policy is latent because it arises upon application of the policy language, which on its face, is not ambiguous.

■ In *Opies Milk Haulers v. Twin City Fire Ins.*, 755 S.W.2d 300, 302 (Mo. App.1988), this court quoted *National Corporation v. Allan*, 280 S.W.2d 428, 432 (Mo.App.1955), for the rule of law to be followed in construing insurance contracts:

> [W]here a contract is clear and unambiguous on its face, or where there is no real conflict of evidence upon any of the essential facts properly to be considered in construing the contract, and the true meaning of the words used is made clear by such evidence, it becomes the duty of the Court, and not the jury, to construe it.

This court also wrote the following in *Vandever*, 708 S.W.2d at 717:

> [T]he trial court must first attempt a construction based on all the circumstances, evidence, and rules of construction, and if that attempt does not result in a resolution of the ambiguity or if the resolution of the ambiguity requires weighing of evidence, then the issue is for the jury.

The court must determine the meaning of the contract when resolving ambiguity in an insurance policy, unless the surrounding circumstances or other extrinsic evidence raise issues of fact. *Auto Owners Mut. Ins. Co. v. Wieners*, 791 S.W.2d 751, 758 (Mo.App.1990). Because there is a latent ambiguity in the instant case and there is no real conflict of evidence upon any essential facts, the court is responsible for construing the insurance contract according to the rules of contract construction. Accordingly, this court shall dispose finally of the case by giving such judgment as the trial court should have given. Rule 84.14.

■ A primary rule which pervades all contract construction is that the court should ascertain the intention of the parties and, unless that intention is in conflict with public policy or rules of law, give effect to that intention. *Prentice v. Rowe*, 324 S.W.2d 457, 465 (Mo.App.1959). The court is to consider the intentions of the parties in giving the contract a practical, reasonable construction. *Rickey v. New York Life Ins. Co.*, 229 Mo.App. 1226, 71 S.W.2d 88, 95 (1934). *See also Tamko Asphalt Products, Inc. v. Fenix*, 321 S.W.2d 527, 532–33 (Mo.App.1958). The intent of the parties is to be drawn from the language employed. *Stafford v. Travelers Ins. Co.*, 530 S.W.2d 23, 25 (Mo.App.1975). "Greater regard is to be accorded to the clear intention of the parties than to any particular language used in attempting to express that intention." *Tamko Asphalt Products, Inc.*, 321 S.W.2d at 533. Policy language must be viewed in light of the meaning a reasonable lay person, who would have purchased the policy, would understand the words to have. *Robin*, 637 S.W.2d at 698; *Stafford*, 530 S.W.2d at 25. In construing Policy 1210, the court must ascertain at what point General American and Southwestern Bell, the original parties to the contract, intended the Rules to be in effect.

A relevant factor is that the beneficiary designation form, Instructions and Rules given to Tammy R. Green on May 16, 1988 were revised as of January 1, 1987, which was the date Policy 1210 was to go into effect. The Greens argue that the revision of these documents on January 1, 1987, is not conclusive evidence that the parties intended them to be in effect prior to June 1, 1990. Although that is true, a contrary conclusion is reached when considering the fact that the parties to the insurance contract, Southwestern Bell and American General, did not just revise the documents; they utilized the revised beneficiary designation form, Instructions and Rules by providing them to an employee, Tammy R.

---

**1.** Language bolded was original to Section 12 of Policy 1210 and not included in Section 13 of Policy 1210's predecessor, Policy 7533.

Green, when enrolling her in the program some nineteen months before June 1, 1990. Such conduct by Southwestern Bell and American General substantiates that it was their intent that such documents have current effect. Such evidence supports a conclusion contrary to the Greens' position that the Rules were not to be applied until June 1, 1990.

Additionally, the Rules were adopted and implemented under Policy 7533, the predecessor of Policy 1210. There was no language in Policy 7533 referring to the Rules, yet, the parties acknowledge that the Rules were applicable under Policy 7533. The language of Section 12 of Policy 1210 governing beneficiary designations until June 1, 1990, is identical to the language contained in Section 13 of Policy 7533. A reasonable inference from the use of identical language is that the parties intended the terms governing beneficiary designations to be unchanged until June 1, 1990.

■ A pertinent rule of construction is that specific terms and provisions of a contract are given preference over general ones. *Phillips v. Authorized Investors Group*, 625 S.W.2d 917, 921 (Mo.App.1981). *See also State v. City of Springfield*, 375 S.W.2d 84, 91 (Mo. banc 1964). As previously determined, by virtue of the fact that the Instructions and Rules were given to Tammy R. Green at the time she applied for life insurance and executed the beneficiary designation form, such documents are considered to be part of the insurance contract. The Rules include specific provisions governing the effect a dissolution of marriage has on the designation of a spouse as beneficiary. Policy 1210 makes no reference to such matters. In applying this rule of construction, the specific provisions on divorce in the Rules would be given preference over the general language concerning beneficiary designations in the policy.

■ A rule of construction supporting the position of the Greens is the maxim *"expressio unius est exclusio alterius."* Although more frequently applied to statutory construction, such maxim is also appli-

cable to the construction of contracts. 17A C.J.S. *Contracts* § 312 (1963). The maxim means that "the expression of one thing is the exclusion of another" or "the mention of one thing implies exclusion of another." Black's Law Dictionary 521 (5th ed. 1979). Under such maxim, the expression in the policy that the Rules were to be applied in determining the beneficiary after June 1, 1990, implies that the failure of the policy to provide that the Rules be applicable prior to June 1, 1990, was intentional.

If, contrary to the maxim *"expressio unius est exclusio alterius,"* Southwestern Bell and American General did not intend for the change in the language of Section 12 to indicate that the Rules were not to be applied until after June 1, 1990, what was their purpose in implementing different language? The paragraph of Section 12 in effect only until June 1, 1990, contains provisions governing the distribution of the policy proceeds under three circumstances: 1) if there is more than one designated beneficiary; 2) if the named beneficiary shall predecease the employee; and 3) if there is no named beneficiary at the death of the employee. After June 1, 1990, there are no specific provisions in Section 12 to control these three circumstances. A reasonable construction of Section 12 is that it was the intent of Southwestern Bell and American General that after June 1, 1990, the three designated situations would be controlled by the Rules in the same way the Rules control all other matters concerning beneficiary designation.

Because there was no express provision in Policy 1210 revoking the Rules and no real conflict in the evidence, under the surrounding circumstances and conditions, a practical, reasonable construction of Policy 1210 is that the parties intended that the Rules be in effect under Policy 1210 at all times after its adoption. Upon divorce, the Rules provide that a spousal beneficiary designation is automatically revoked. Tammy R. Green was made aware of the Rules by being given a copy of the Rules at the time she made the beneficiary designation. She is, therefore, presumed to have known that revocation of the spousal bene-

**134**

ficiary designation upon divorce would result in payment of the life insurance proceeds to her estate. The fact that Tammy R. Green took no action to change her designated beneficiary after the divorce leads to the conclusion that the spousal revocation, as specified in the Rules, takes place.

■■■■ The life insurance proceeds at issue in this case are to be paid to Tammy R. Green's estate under the terms of Policy 1210. The contingent beneficiary, Donald G. Green, is not entitled to the policy proceeds because the Rules specify that upon revocation of a spousal beneficiary designation due to divorce, the policy proceeds are to be paid to the estate of the insured. Even absent this provision, Donald G. Green would not be entitled to the proceeds because the plain meaning of "contingent beneficiary" requires payment to the contingent beneficiary of the proceeds of a life insurance policy if the primary beneficiary is deceased at the time of the death of the insured. *Reliable Life Ins. Co. v. Spurgeon*, 763 S.W.2d 674, 676 (Mo.App.1988). The Rules themselves define a contingent beneficiary as "a named person who is to take upon surviving the employee if the primary beneficiary fails to survive the employee." Larry G. Green, the primary beneficiary, did not predecease Tammy R. Green and the policy does not contain a provision indicating that divorce should be treated in the same manner as death of the primary beneficiary. The proceeds of the policy are to be paid to Tammy R. Green's estate. Point II is granted.

The judgment is reversed and the cause is remanded to the trial court with directions to vacate its summary judgment in favor of the Greens and to enter summary judgment in favor of Carol J. Barrett, personal representative of the estate of Tammy R. Green.

All concur.