**AFFIRMATIVE INSURANCE COMPANY, Plaintiff,**

**v.**

**John F. BROEKER, Jr., Tracy Broeker, Malayna Mendenhall, Cameron Mendenhall, Julian Mendenhall, Appellants,**

**and**

**Empire Fire and Marine Insurance Company, Respondent.**

**No. ED 98700.**

Missouri Court of Appeals, Eastern District, Division Four.

July 30, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 17, 2013.

Application for Transfer Denied Nov. 26, 2013.

**316**

Timothy J. Gallagher, St. Louis, MO, for appellants.

Russell F. Watters, St. Louis, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

This appeal arises out of a petition for declaratory judgment filed by Affirmative Insurance Company (Affirmative)[1] against Empire Fire & Marine Insurance Co. (Empire) and John and Tracy Broeker (Appellants), grandparents and guardians of the children of Trenton and Casey Mendenhall, who died in an automobile accident while driving a vehicle rented from Enterprise Leasing Company of St. Louis (Enterprise). The parties filed cross-motions for summary judgment in an effort to determine whether Appellants were entitled to coverage under insurance policies issued by Affirmative (to Trenton Mendenhall) and Empire (to Enterprise). Appellants appeal the trial court's order granting Empire summary judgment and holding that Empire's policy neither provided excess coverage for Appellants' nor required Empire to pay Appellants the statutory mandatory minimum of $25,000. We affirm.

### Factual and Procedural Background

On July 8, 2010, Enterprise rented a car to Casey Mendenhall. At the time of rental, Casey Mendenhall executed a rental agreement (Rental Agreement) and agreed to purchase, among other things, Optional Supplemental Liability Protection (OSLP) at an additional cost of $12.99 per day. In Paragraph 17 of the "Additional Terms and Conditions" section, the Rental Agreement set forth the OSLP as follows:

> Optional Supplemental Liability Protection (SLP) provides Renter with minimum financial responsibility limits as outlined in the applicable motor vehicle financial responsibility laws of the state where Vehicle is operated[2] AND excess Insurance provided by the insurance policy, which supplies Renter and AAD(s)[3] with third-party liability pro-

---

1. Affirmative is not a party to this appeal.

2. The Missouri Motor Vehicle Financial Responsibility Law (MVFRL) provides:

 Such owner's policy of liability insurance: ... (2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits, exclusive of interest and costs, with respect to each such motor vehicle, as follows: twenty-five thousand dollars be-

 cause of bodily injury to or death of one person in any one accident and, subject to said limit for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and ten thousand dollars because of injury to or destruction of property of others in any one accident.

 Mo.Rev.Stat. § 303.190.2(2).

3. The Rental Agreement defined "AAD(s)," or "Additional Authorized Driver(s)," as: "[A]ny individual in addition to Renter who is permitted by Owner to operate Vehicle. This includes individuals identified on Page 1 as ADDITIONAL AUTHORIZED DRIVER(S), and with the permission of Renter, includes Renter's spouse who meets the minimum rental age and holds a valid license."

tection with a combined single limit per accident equal to the difference between the minimum financial responsibility limits referenced above and $1,000,000 Combined Single Limit per accident. SLP will respond to third party accident claims that result from bodily injury, including death, and property damage that arise from the use or operation of Vehicle as permitted in this Agreement....

The "excess Insurance provided by the insurance policy" referenced in the OSLP referred to an excess insurance policy that Empire issued to Enterprise (Empire policy).[4] The Empire policy provided excess coverage, subject to certain conditions and exclusions, to persons who paid to rent vehicles from Enterprise and opted to purchase the OSLP. More specifically, the Empire policy provided excess coverage in the amount of the difference between $1,000,000 and the limits of the underlying insurance, defined as the "policy or policies of insurance, bond, cash deposit or self insurance, maintained by the 'policyholder' or 'insured' which satisfy at least the Minimum Financial Responsibility requirements of the state where the accident occurred."

While driving the rental vehicle on July 12, 2010, Casey Mendenhall's husband, Trenton Mendenhall, apparently fell asleep at the wheel and drove the rental car off an embankment. Both Mendenhalls died in the accident.

Following the Mendenhalls' deaths, Enterprise tendered to Appellants $25,000 consistent with the OSLP's promise to provide the "minimum financial responsibility limits as outlined in the [Missouri Motor Vehicle Financial Responsibility

(MVFRL)]." Empire denied coverage for Appellants' claim for Casey Mendenhall's wrongful death under the Empire policy's household exclusion.

Affirmative, which insured Trenton Mendenhall's personal automobile, filed a petition for a declaratory judgment that it had no duty to defend or indemnify Trenton Mendenhall in a potential wrongful death claim arising from Casey Mendenhall's death. Thereafter, Affirmative amended its petition for a declaratory judgment by joining Empire as a defendant. Subsequently, Appellants filed a wrongful death lawsuit against Trenton Mendenhall. Appellants also counterclaimed against Affirmative and cross-claimed against Empire seeking a declaration that Affirmative's and Empire's policies covered Appellants' wrongful death claim.

The parties entered a joint stipulation of facts, and Empire filed a motion for summary judgment against Appellants and Affirmative. Appellants and Affirmative also filed motions for summary judgment. In its motion for summary judgment, Empire contended that: (1) its excess policy did not cover Appellants' claims arising from the July 12, 2010 accident because the policy excluded from coverage "bodily injury" sustained by an insured or an insured's household member, and the term "bodily injury" included death; and, alternatively, (2) if coverage existed, the maximum amount of coverage to which Appellants were entitled was $25,000. The trial court granted Empire's motion for summary judgment holding that: (1) as a result of the household exclusion, the Empire policy did not provide Appellants $1,000,000 in excess coverage; and (2) because the Em-

---

4. "An excess policy provides specific coverage above an underlying limit of primary insurance." New Appleman on Ins. Law Library Ed., Section 24–2. "Excess coverage general-ly is not triggered until the underlying primary limits are exhausted by way of judgments or settlements." *Id.*

pire policy "provides only excess coverage," Empire did not owe Appellants a minimum payment of $25,000.[5] This appeal follows.

### Standard of Review

■ Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Rule 74.04(c); *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). There is no dispute as to the material facts in this case. Both points on appeal involve only the interpretation of an insurance policy, which is a question of law that this court reviews de novo. *Karscig v. McConville*, 303 S.W.3d 499, 502 (Mo. banc 2010).

### Discussion

■ In their first point on appeal, Appellants claim that the trial court erred when it held that the Empire policy did not entitle Appellants to excess coverage up to $1,000,000 for their loss resulting from Casey Mendenhall's death.[6] More specifically, Appellants contend that the excess coverage applies because, according to the Rental Agreement, although the Empire policy's household exclusion excluded third party liability claims resulting from bodily injury and property damage, the policy did not exclude liability for a wrongful death. Empire counters that the trial court properly declared that no coverage existed under the Empire policy for

Casey Mendenhall's wrongful death because Appellants' "claim was precluded by the household exclusion in that the exclusion included death claims and the Rental Agreement accurately reflected that fact."

■ The interpretation of an insurance policy is a question of law. *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007). In construing the terms of an insurance policy, this court "applies the meaning which should be attached by an ordinary person of average understanding if purchasing insurance and resolves ambiguities in favor of the insured." *Id.* (internal quotations omitted). "The plain meaning of the various terms of an insurance policy is not determined by viewing the terms in isolation but by viewing them in reference to the whole policy." *Golden Rule Ins. Co. v. R.S.*, 368 S.W.3d 327, 334 (Mo.App. W.D.2012).

■ "When the words and phrases in the policy, viewed as a whole, are ambiguous, we must resort to the rules of contract construction applicable to insurance policies." *Id.* at 334. "[A]n ambiguity arises in an insurance contract when, due to duplicity, indistinctness, or uncertainty in the meaning of the words used, the policy is reasonably open to different constructions." *Nat'l Union Fire Ins. Co. v. Maune*, 277 S.W.3d 754, 758 (Mo.App. E.D.2009); *see also Seeck*, 212 S.W.3d at 132. If an ambiguity exists in an insurance policy, the court must construe the policy in favor of the insured. *Seeck*, 212 S.W.3d at 132. However, when the insur-

---

**5.** The trial court entered summary judgment in favor of Appellants on their claim against Affirmative, and Affirmative tendered to Appellants the $25,000 minimum coverage required by the MVFRL.

**6.** Empire urges this court to dismiss Appellants' appeal for failure to comply with the briefing requirements of Rule 84.04(d) in that their points relied on do not conform to the

form prescribed by the rule. "While not condoning noncompliance with the rules, a court will generally, as a matter of discretion, review on the merits where disposition is not hampered by the rule violations." *McNeill v. City of Kansas City*, 372 S.W.3d 906, 910 n. 3 (Mo.App. W.D.2012) (*quoting In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 822 (Mo. banc 2011)). We exercise such discretion here.

ance policy is unambiguous, the court will enforce the policy according to its terms. *Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. banc 1991).

 A household exclusion is a "limitation or exclusion from providing coverage for bodily injury to the insured or anyone connected with the insured by blood or affinity." *Jensen v. Allstate Ins. Co.*, 349 S.W.3d 369, 375 (Mo.App. W.D. 2011). "While generally disfavored, [household exclusion] clauses are permissible to exempt the insurer from being required to cover claims by those persons to whom the insured, on account of close family ties, would be apt to be partial in the case of injury...." *Progressive Northwestern Ins. Co. v. Talbert*, 407 S.W.3d 1, 6 (Mo.App. S.D.2013) (*quoting Shahan v. Shahan*, 988 S.W.2d 529, 539 (Mo. banc 1999) (J. White, dissenting)). The Supreme Court has held that a household exclusion can limit coverage to $25,000 per person, the amount of minimal coverage required by the MVFRL. *Halpin v. Am. Family Mut. Ins. Co.*, 823 S.W.2d 479, 482–83 (Mo. banc 1992).

At the time of rental, Enterprise provided Casey Mendenhall a four-page Rental Agreement, which offered, among other things, the option to purchase OSLP. Casey Mendenhall agreed to purchase OSLP by initialing a box that stated: "RENTER ACCEPTS OPTIONAL SUPPLEMENTAL LIABILITY PROTECTION (SLP) AT FEE SHOWN IN COLUMN TO RIGHT. SEE PAGE 3, PARAGRAPH 17." Paragraph 17 of the Rental Agreement described the OSLP as follows:

17. *Optional Supplemental Liability Protection.*

THE PURCHASE OF SUPPLEMENTAL LIABILITY PROTECTION IS OPTIONAL AND IS NOT REQUIRED IN ORDER TO RENT A VEHICLE. THIS IS A SUMMARY ONLY AND IS SUBJECT TO ALL PROVISIONS, LIMITATIONS, EXCEPTIONS AND EXCLUSIONS OF THE SLP POLICY.[7] UPON REQUEST, A COPY OF THE POLICY IS AVAILABLE FOR REVIEW. SLP MAY PROVIDE A DUPLICATION OF COVERAGE ALREADY FURNISHED UNDER A PERSONAL INSURANCE POLICY, OR SOME OTHER SOURCE. OWNER'S EMPLOYEES, AGENTS OR ENDORSEES ARE NOT QUALIFIED TO EVALUATE THE ADEQUACY OF RENTER'S EXISTING COVERAGE.

*SLP Benefits:*

Optional Supplemental Liability Protection (SLP) provides Renter with minimum financial responsibility limits as outlined in the applicable motor vehicle financial responsibility laws of the state where Vehicle is operated AND excess Insurance provided by the insurance policy, which supplies Renter and AAD(s)[8] with third-party liability protection with a combined single limit per accident equal to the difference between the minimum financial responsibility limits referenced above and $1,000,000 Combined Single Limit per accident. SLP will respond to third party accident claims that result from bodily injury, including death, and property damage that arise from the use or operation of

7. There is no dispute that "SLP policy" refers to the Empire policy.

8. The Rental Agreement defined "AAD(s)," or "Additional Authorized Driver(s)," as: "[A]ny individual in addition to Renter who is permitted by Owner to operate Vehicle. This includes individuals identified on Page 1 as ADDITIONAL AUTHORIZED DRIVER(S), and with the permission of Renter, includes Renter's spouse who meets the minimum rental age and holds a valid license."

Vehicle as permitted in this Agreement. The policy does not provide coverage for any loss arising from the use or operation of Vehicle in Mexico. SLP is available for an additional charge as stipulated on Page 1.

*SLP Exclusions:*

For all exclusions, see the SLP policy. Here are a few key exclusions: (a) Loss arising out of an accident which occurs while Renter or AAD(s) is under the influence of alcohol or drugs or other substances unless prescribed by a physician; (b) Loss arising out of bodily injury or property damage sustained by Renter or AAD(s) or any relative or family member of Renter or AAD(s)....

(emphasis in original). Casey Mendenhall signed an "Acknowledgement of the Entire Agreement, Pages 1 through 4," stating: "I have read and agree to the terms and conditions on pages 1 through 4 of this agreement and by my signature below I am the 'renter' under this agreement."

The Empire policy referenced in Paragraph 17 of the Rental Agreement consisted of 155 pages.[9] Under "Section I—Liability Insurance" on page one, the policy provided:

A. *COVERAGE*

1. This policy provides excess auto liability insurance and only applies to a "loss" involving "bodily injury" and "property damage" caused by an "accident" and resulting from the use of a covered "rental vehicle."

On page two, the policy set forth the following household exclusion:

D. *EXCLUSIONS*

In addition to the exclusions contained in the "underlying insurance," this insurance does not apply to the following:

. . . .

3. Loss arising out of "bodily injury" or "property damage" sustained by any "insured" or any relative or family member of the "insured" who resides in the same household.

The policy defined the term "bodily injury" to mean "bodily injury, sickness or disease sustained by a person including death resulting from any of these."

Appellants do not dispute that the Empire policy's household exclusion included wrongful death claims, along with claims resulting from bodily injury and property damage. Appellants maintain, however, that the language of the Rental Agreement, which purported to summarize the exclusions, created an ambiguity. Under the heading *"SLP Benefits,"* the Rental Agreement stated: "[O]SLP will respond to third party accident claims that result from bodily injury, including death, and property damage that arise from the use or operation of Vehicle as permitted in this Agreement." Immediately below this general description of the OSLP benefits appeared a paragraph entitled, *"SLP Exclusions,"* which provided: "For all exclusions, see the SLP policy. Here are a few key exclusions: .... (b) Loss arising out of bodily injury or property damage sustained by Renter or AAD(s) or any relative or family member of Renter or AAD(s)." Appellants contend that, because the Rental Agreement promised to "respond to third party accident claims that result from bodily injury, including death, and property damage," and Rental Agreement's summary of "key exclusions" referred only to "loss arising out of bodily injury or property damage," this court must construe the Empire policy to pro-

---

9. The record does not reveal whether Casey Mendenhall sought to review a copy of the Empire policy.

vide excess coverage for a loss resulting from the death of a household member. We disagree.

The Rental Agreement effectively defined the term "bodily injury" to include death when it stated that the "SLP will respond to third party accident claims that result from bodily injury, including death, and property damage . . . ." Thus, when the Rental Agreement referenced "bodily injury" two sentences later in the summary of "key exclusions," the ordinary consumer would understand that "bodily injury" includes death, even though the summary of "key exclusions" did not repeat the previous explanatory language. "[T]he absence of a redundant clarifier does not create an ambiguity where none exists." *DeMeo v. State Farm Mut. Auto. Ins. Co.*, 639 F.3d 413, 416 (8th Cir.2011) (applying Missouri law).

This reading is consistent with Missouri law holding that household exclusions preclude coverage for wrongful death claims arising out of or derived from the bodily injury to an insured. *See, e.g., Kennedy v. State Farm Mut. Auto. Ins. Co.*, 986 S.W.2d 936, 937 (Mo.App. E.D.1999). For example, in *Kennedy*, this court held that, because the plaintiff's wrongful death claim was derivative of her father's bodily injury claim, for which her father recovered $25,000 under the automobile liability policy, the plaintiff was not entitled to recover an additional $25,000 for his death. 986 S.W.2d at 937; *see also St. Paul Fire & Marine Ins. Co. v. Warren*, 87 F.Supp.2d 904, 911 (E.D.Mo.1999) ("[I]t is established Missouri law that household exclusion clauses, such as the subject clause, are unambiguous and preclude coverage for wrongful death claims arising out of or derived from the bodily injury to an insured no matter who pursues the claim and regardless of who seeks coverage under a policy.").

Appellants cite *Versaw v. Versaw*, for the proposition that "[w]here a term is used in one clause of a policy, its absence in another clause is significant" particularly "when, as here, the clauses being compared are exclusions that appear immediately adjacent to each other in the policy." 202 S.W.3d 638, 645 (Mo.App. S.D.2006). In *Versaw*, the court concluded that an insurance policy's household exclusion was ambiguous because it used the undefined term "any person" and not "you or your" or "insured," terms which the policy defined and used in every other policy exclusion that excluded coverage based on status. *Id.* at 644–45. The court explained: "The selective use of defined terms to exclude coverage except for the household exclusion could reasonably create the impression to a lay person who bought the policy that the defined phrase ('you,' 'your,' and 'insured person') referred to a mutually exclusive class, separate and different than the 'any person' class." *Id.* at 644. *Versaw* is inapposite. First, the court in *Versaw* considered two clauses in an insurance policy, not a rental agreement. More importantly, unlike the policy in *Versaw*, which failed to define or explain the ambiguous term "any person," the Rental Agreement expressly stated that "bodily injury" includes death.

Even if the Rental Agreement's summary of the household exclusion was ambiguous, the Rental Agreement clearly provided that the terms of the Empire policy, not the Rental Agreement, controlled. Paragraph 17 stated in capitalized letters: "THIS IS A SUMMARY ONLY AND IS SUBJECT TO ALL PROVISIONS, LIMITATIONS, EXCEPTIONS AND EXCLUSIONS OF THE SLP POLICY." Directly above the list of summarized exclusions, the Rental Agreement advised: "For all exclusions, see the SLP Policy." As previously discussed, the Em-

pire policy clearly defined "bodily injury" as "bodily injury, sickness or disease sustained by a person *including death* resulting from any of these." (emphasis added). Because the Rental Agreement advised Casey Mendenhall that paragraph 17 was a "summary only" and the summary was subject to the exclusions of the Empire policy, and because the Empire policy unambiguously excluded from coverage claims for loss resulting from death, the trial court properly found that the Empire policy's household exclusion "provides no coverage for husband's negligence in causing wife's death."

In support of their argument that the Empire policy covered their wrongful death claim and entitled them to excess coverage up to $1,000,000, Appellants rely on cases holding that promotional materials upon which a consumer relies when purchasing insurance become part of the policy. *See Gen. Am. Life Ins. Co. v. Barrett,* 847 S.W.2d 125, 130 (Mo.App. W.D.1993); *Crawford v. Mid–Am. Ins. Co.,* 488 S.W.2d 255, 258 (Mo.App.1972). In *Crawford v. Mid–Am. Ins. Co.,* the insured purchased a Scholastic Accident Insurance Policy containing more restrictive language than the insurance application form that was distributed to potential customers.[10] 488 S.W.2d at 257. Even though the application form stated, "See the Master Policy on File with the school for complete Details," the court held that the insurer was bound by the coverage advertised in the application and not by the more restrictive language of the master policy. *Id.* at 257, 258. The court reasoned: "[T]he insurance policy often is practicably unintelligible and generally

never read, whereas brochures and other material given out by the insurer are read and relied upon." *Id.* at 258 (*quoting* 13 Appleman, Ins. Law & Prac. § 7534). Therefore, the court enforced "the contract expected by the insured, that is the contract set out in the brochure or prospectus." *Id.*

Unlike the application form and master policy in *Crawford,* which, when read together, created ambiguities as to the extent of the coverage afforded, the Rental Agreement and the Empire policy promised Casey Mendenhall the same coverage with respect to third-party liability for bodily injury and death. Furthermore, although the application form in *Crawford* merely advised that the master policy was on file with the school, here, the Rental Agreement expressly stated that it was a summary of the coverage provided by the Empire policy and was "SUBJECT TO ALL PROVISIONS, LIMITATIONS, EXCEPTIONS, AND EXCLUSIONS OF THE SLP POLICY." (emphasis in original).

In *Gen. Am. Life Ins. v. Barrett,* the insurance company provided the decedent-insured a beneficiary designation form, rules, and instructions for designating a beneficiary when she enrolled in a group life insurance program. 847 S.W.2d at 128. The rules and instructions stated that, if the insured designated a spouse as the beneficiary but was no longer married to that individual at the time of death, the insurer would treat as revoked the designation of that beneficiary. *Id.* The policy was silent as to this matter. *Id.* at 131. Following *Crawford,* the *Barrett* court held

---

10. The master policy provided coverage for "bodily injuries caused by accidental means occurring while insured hereunder and while . . . (3) participating in extracurricular activities under the supervision of the Policyholder. . . ." *Crawford,* 488 S.W.2d at 257. The

Special Notice to Parents brochure promised coverage for accidental bodily injuries received while "[p]articipating in *or attending* school-sponsored and supervised activities. . . ." *Id.* (emphasis added).

that "[m]aterials supporting and explaining an insurance policy, such as the certificate and descriptive brochures, which contain essential provisions to the contract found nowhere else[,] are considered to be part of the insurance contract." *Id.* at 130. The court concluded that, because the beneficiary designation form, instructions, and rules received by the insured "contained provisions regarding beneficiary designation that were found nowhere else in the policy," they "were incorporated into the [policy] and became part of the insurance agreement." *Id.*

*Barrett* is distinguishable because, in that case, the rules and instructions contained contract provisions "found nowhere else in the policy." The Supreme Court has made clear that, when a "brochure contains provisions found nowhere else which are essential to a complete contract," the brochure "constitutes a part of the insuring agreement." *Behr v. Blue Cross Hosp. Serv. Inc.,* 715 S.W.2d 251, 255 (Mo. banc 1986); *see also Lutsky v. Blue Cross Hosp. Serv., Inc.,* 695 S.W.2d 870, 872 (Mo. banc 1985). In the instant case, the Rental Agreement did not promise coverage that was not provided by the Empire policy and therefore created no ambiguity. Point denied.

■ In their second point on appeal, Appellants contend in the alternative that, even if the Empire policy's household exclusion applied to their wrongful death claim, Empire is liable for "an additional mandatory minimum for the underlying wrongful death claim" because "the Rental Agreement clearly promised that the [O]SLP 'provides Renter with minimum financial responsibility limits.'" In response, Empire argues that it is not responsible for payment of the MVFRL limit because it is a "true excess insurer" and is therefore not subject to the MVFRL's minimum limit.

■ "The purpose of the MVFRL is to ensure that persons injured on Missouri's highways, whether they be owners, operators, occupants of the insured's vehicle, occupants of other vehicles, or pedestrians, may collect at least minimal damage awards against negligent motor vehicle operators." *Am. Standard Ins. Co. v. Hargrave,* 34 S.W.3d 88, 90 (Mo. banc 2000). To this end, all owners and operators of vehicles registered in this state, or required to be registered in this state, must maintain liability coverage that meets or exceeds the statutory minimums set forth in the MVFRL. Mo.Rev.Stat. §§ 303.025.1, 303.190.2; *Rutledge v. Bough,* 399 S.W.3d 884, 886–87 (Mo.App. S.D.2013). The MVFRL requires each owner's and operator's policy issued in Missouri to provide minimum liability coverage of $25,000 for bodily injury or death to any one person in any one accident. Mo.Rev.Stat. § 303.190; *Karscig,* 303 S.W.3d at 504.

Significantly, "excess insurance coverage is not subject to the minimum financial requirements of Section 303.190 [of the MVFRL]." *Hargrave,* 34 S.W.3d at 92. This court explained the distinction between primary and excess insurance coverage as follows:

> Primary insurance first pays toward the loss. Excess insurance then pays after the limit of the primary insurance is exhausted. A separate class of policies is expressly written to provide excess coverage. Designed to cover catastrophic losses, excess insurance policies begin coverage when the underlying coverage ends. Excess insurance can be classified by type: "true excess" or "umbrella" .... A true excess policy provides coverage above a primary policy for specific risks.

*Selimanovic v. Finney,* 337 S.W.3d 30, 39–40 (Mo.App. E.D.2011) (*quoting Planet Ins. Co. v. Ertz,* 920 S.W.2d 591, 593–94 (Mo.App. W.D.1996)). If, as Empire contends, its policy is a true excess policy, then Empire does not owe Appellants an additional mandatory minimum limit under the MVFRL.

The OSLP stated that it provided the renter with "excess Insurance provided by the insurance policy," and the Empire policy likewise provided that its purpose was to afford excess insurance over and above the "underlying insurance." Section I, entitled "Liability Insurance," stated:

> A. *COVERAGE.*
>
> 1. This policy provides excess auto liability insurance and only applies to a "loss" involving "bodily injury" and "property damage" caused by an "accident" resulting from the use of a covered "rental vehicle."
>
> 2. We will indemnify any "insured" for such "loss" in excess of the "underlying insurance" for which this coverage applies during the "coverage period", provided our liability shall apply only to the "ultimate net loss" in excess of such "underlying insurance."

Subsection C, entitled *"LIMIT OF INSURANCE,"* provided: "Regardless of the number of 'insureds', 'rental vehicles', premiums paid, or claims made, the most we will pay for 'ultimate net loss' is the difference between the limits of liability provided by the 'underlying insurance' and the 'supplemental rental liability insurance' limit shown in the Declarations." The Empire policy defined the term "underlying insurance" to mean: "the policy or policies of insurance, bond, cash deposit or self insurance, maintained by the 'policyholder' or 'insured' which satisfy at least the Minimum Financial Responsibility requirements of the state where the accident occurred."

The parties jointly stipulated that Enterprise, as self-insured owner of the vehicle involved in the accident, tendered Appellants $25,000, the mandatory minimum limit required by Section 303.190.2(2) of the MVFRL. Following the trial court's order, Affirmative also tendered Appellants $25,000 under Trenton Mendenhall's personal automobile liability insurance policy. Appellants seek an additional $25,000 from Empire based on the language in the Rental Agreement that the "Optional Supplemental Liability Protection (SLP) provides Renter with minimum financial responsibility limits as outlined in the applicable motor vehicle financial responsibility laws ... AND excess Insurance provided by the insurance policy, which supplies Renter and AAD(s) with third-party liability protection...." (emphasis in original).

Based on our review, we conclude that the Rental Agreement communicated to Casey Mendenhall that a renter who purchased OSLP was entitled to two types of benefits: (1) at least the mandatory minimum coverage under the MVFRL; and (2) excess coverage. In this case, Enterprise paid Appellants the mandatory minimum MVFRL limits consistent with the Rental Agreement.[11] Empire, as the excess insurer, was responsible solely for payment of the excess insurance, to which, as discussed above, Appellants were not entitled as a result of the household exclusion. Nothing in the Rental Agreement prom-

---

11. Appellants correctly point out that an insured party may receive more than one statutory limit of $25,000 in compensation if he or she is insured under multiple policies. *Har-* *grave,* 34 S.W.3d at 91. Indeed, in this case, Appellants received payments of the mandatory minimum limit from both Enterprise and Affirmative.

ised Casey Mendenhall that the OSLP entitled her to "minimum financial responsibility limits" from Enterprise and from the excess insurer (Empire). We therefore conclude that the trial court properly held that Empire was not liable to Appellants for an additional minimum sum of $25,000. Point denied.

### Conclusion

The judgment of the trial court is affirmed.

LAWRENCE E. MOONEY, P.J., and ROBERT G. DOWD, JR., J., concur.